2011 UT 39

**Steven W. SELVIG and Barbara D. Selvig, Plaintiffs, Appellants, and Cross–Appellees,**

v.

**BLOCKBUSTER ENTERPRISES, LC; Highland Development, Inc.; and Joan A. Steed, Defendants, Appellees, and Cross–Appellants.**

No. 20090494.

Supreme Court of Utah.

July 19, 2011.

Rehearing Denied Sept. 27, 2011.

---

692

Laura S. Scott, Christina Jepson Schmutz, Salt Lake City, for plaintiffs.

Mary Anne Q. Wood, Kathryn O. Balmforth, Salt Lake City, for defendants.

Justice PARRISH, opinion of the Court.

## INTRODUCTION

¶ 1 Barbara and Steven Selvig (as sellers) and Blockbuster Enterprises (as buyer) entered into a Real Estate Purchase Contract (the Contract) for the purchase of the Kastle Inn (the Inn or the Property), a bed and breakfast located in Midway, Utah. The Contract specified that the Selvigs would deliver possession of the Inn to Blockbuster and that the deed to the Property would be recorded when Blockbuster paid the full purchase price. Before paying the full purchase price, however, Blockbuster recorded the deed. In response, the Selvigs sued for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

¶ 2 The parties tried the case to a judge in a bench trial. At the close of the Selvigs' case in chief, Blockbuster moved to dismiss under rule 41(b) of the Utah Rules of Civil Procedure. Blockbuster argued that the Selvigs' contractual claims should be dismissed pursuant to an election of remedies provision found in the Contract. This provision provided that if Blockbuster defaulted, the Selvigs could elect to either retain the earnest money deposit as liquidated damages or return the earnest money deposit and sue Blockbuster for damages. Blockbuster argued that because the Selvigs had not returned the earnest money deposit, they had elected their remedy and were barred from bringing suit.

¶ 3 The district court granted Blockbuster's motion and dismissed all of the Selvigs' claims. First, the court dismissed the Selvigs' claims for breach of contract and breach of the covenant of good faith and fair dealing, holding that the Selvigs had elected their remedy by keeping the earnest money deposit. Second, it dismissed the Selvigs' unjust enrichment claim on the ground that the dispute was covered by a valid contract governing the purchase of the Property. The Selvigs appealed.

¶ 4 Because the election of remedies provision does not apply to a breach of contract claim arising out of a wrongful recording of the deed, we hold that the district court erred in dismissing the Selvigs' claims for breach of contract and breach of the covenant of good faith and fair dealing. And because the sale of the Property was covered by a written contract, we hold that the district court correctly dismissed the Selvigs' claim for unjust enrichment. We therefore affirm the district court's order regarding the issue of unjust enrichment but reverse and remand the contractual claims.

## BACKGROUND [1]

¶ 5 The Selvigs owned a bed and breakfast in Midway, Utah. The Selvigs had a first mortgage on the Inn of approximately $550,000 and obtained a line of credit secured by the Inn that carried a balance of $70,000. The Selvigs listed the Inn for sale in the spring of 2005. Blockbuster saw the listing and expressed interest in purchasing the Property. On June 12, 2005, Blockbuster and the Selvigs entered into a contract for the purchase of the Inn. The Contract consisted of a standard form real estate purchase contract and three addenda. The first addendum contains a description of the Property, the second addendum describes the contents of the Inn to be included in the sale, and the third addendum describes the down payment.

¶ 6 The value of the down payment was $125,000. It included a $75,000 down payment on the Property—$1,000 due on June 6, 2005, and the remaining $74,000 due at closing—and a $50,000 construction credit on a cabin at the Utah Mini-Ranches in Duchesne County. The Utah Mini-Ranches is a development operated by Highland Development Company, which is owned by Joan Steed, who also owns Blockbuster.[2]

¶ 7 The agreed sale price of the Inn was $759,139, which consisted of the down payment of $125,000 and the assumption of the Selvigs' two mortgages, which totaled $634,139. The Selvigs argue that the parties also agreed that Blockbuster would convey to the Selvigs lot 139, a prime lot located at the Utah Mini-Ranches, in exchange for the contents of the Inn.

¶ 8 Blockbuster and the Selvigs agreed that the transaction would close on or before September 30, 2005. The Contract provided that closing would occur when

(a) Buyer and Seller have signed and delivered to each other ... all documents required by this Contract, by the Lender, by written escrow instructions signed by the Buyer and the Seller, and by applicable law; (b) the moneys required to be paid under these documents have been delivered to the escrow/title company in the form of collected or cleared funds; and (c) the deed the seller has agreed to deliver under Section 6 has been recorded.

¶ 9 The Contract contained an election of remedies provision, which defined the procedures to be followed in the event of default. It provided that

[i]f Buyer defaults, Seller may elect to either retain the Earnest Money Deposit as liquidated damages or to return the Earnest Money Deposit and sue Buyer to enforce Seller's rights. If Seller defaults, in addition to return of the Earnest Money Deposit, Buyer may elect to either accept from Seller as liquidated damages a sum equal to the Earnest Money Deposit or sue Seller for specific performance and/or damages .... Where a Section of this Contract provides a specific remedy, the parties intend that the remedy shall be exclusive regardless of rights which might otherwise be available under common law.

¶ 10 The parties agreed to meet and close the transaction on September 20, 2005. The Selvigs testified that they believed that Blockbuster would have either paid off or assumed the existing mortgages on the Property by that date, which was ten days before the contractual closing deadline. But when the parties met on September 20, Blockbuster told the Selvigs that it had neither assumed nor paid off the mortgages. Instead, Blockbuster presented to the Selvigs a Lease to Purchase Agreement. Under the terms of the proposed Lease to Purchase Agreement, Blockbuster would lease the Inn for twelve months and would assume the Selvigs' monthly payments on both the first and sec-

---

1. The facts contained in this section are derived primarily from the district court's factual findings. We note that this is an appeal from a rule 41(b) involuntary dismissal that occurred immediately after the Selvigs presented their case in chief and before Blockbuster had the opportunity to present its case. Therefore, as discussed further in Part III, on remand, the district court is not bound by these factual findings.

2. The original Contract was entered into by Ms. Steed and the Selvigs. However, Blockbuster was subsequently substituted as the buyer. We refer to Ms. Steed and Blockbuster interchangeably throughout this opinion.

ond mortgages during that time. It further provided that by September 1, 2006, Blockbuster would pay off both the first and second mortgages and the parties would then close the transaction. The Selvigs signed the Lease to Purchase Agreement and Blockbuster tendered the $74,000 down payment for the Property. During the September 20 meeting, Blockbuster produced a warranty deed for the Property and asked the Selvigs to sign it. Blockbuster promised that it would not file the deed until closing. Based on this representation, the Selvigs signed the deed.

¶ 11 After the meeting, Blockbuster took possession of the Inn and began making the monthly mortgage payments. On March 28, 2006, Blockbuster paid off the second mortgage. However, Blockbuster failed to pay off the first mortgage by the September 1, 2006 deadline.

¶ 12 Sometime in early September 2006, Blockbuster contacted the Selvigs to discuss whether they would be interested in returning to the Inn as inn-keepers for the 2006–2007 ski season. The Selvigs expressed interest in the position and the parties met one week later to discuss the arrangement. At the meeting, the Selvigs mentioned that they "needed to get this deal finished." The Selvigs understood this statement to mean that Blockbuster needed to pay off the first mortgage. This was the last time the parties discussed payment.

¶ 13 On October 3, 2006, Mr. Selvig went to the Inn to determine what repairs were necessary for the reopening. After his inspection, he called Blockbuster and expressed concern about having the Inn ready for an October opening. What else was said during this conversation is unclear, but Ms. Steed testified that she believed the Selvigs intended to terminate the Contract. Therefore, on October 3, 2006, she went to the Wasatch County Recorder and recorded the deed. Later that afternoon, Ms. Steed called and left a message on the Selvigs' answering machine stating that "this is not going to work" and to "come get your stuff." At this time, even though it had recorded the deed, Blockbuster had not paid off the first mort-

gage. However, it continued to make monthly mortgage payments.

¶ 14 The Selvigs filed suit on October 12, 2006. They alleged three causes of action: breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. The Selvigs did not return the earnest money deposit before filing suit. On November 29, 2006, while the case was awaiting trial, Blockbuster paid the first mortgage in full.

¶ 15 Upon payment of the first mortgage, Blockbuster's only outstanding obligations under the agreement were the $50,000 construction credit and its alleged agreement to convey lot 139 to the Selvigs. Blockbuster sent letters to the Selvigs expressing interest in building the cabin. However, the cabin was never built and lot 139 was never conveyed. Both parties blame each other for not moving forward with construction.

¶ 16 The case was tried to the court. At the conclusion of the Selvigs' case in chief, Blockbuster filed a rule 41(b) motion for involuntary dismissal. Blockbuster argued that the Selvigs were barred by the election of remedies provision from suing Blockbuster for damages because they had failed to refund the earnest money deposit before filing suit. Although the Selvigs argued that Blockbuster waived the election of remedies defense by not raising it earlier in the proceedings, the district court granted Blockbuster's motion. Additionally, the district court *sua sponte* ruled that Blockbuster was entitled to attorney fees under the Contract even though the issue of attorney fees had not been raised by Blockbuster in any of its pleadings. Although the district court subsequently awarded fees to Blockbuster, it declined to award the full amount of attorney fees and costs requested because it concluded that Blockbuster could have avoided a substantial portion of the fees and costs incurred if it had raised its election of remedies defense earlier in the proceedings.

¶ 17 On June 10, 2009, the Selvigs appealed the district court's dismissal. On June 26, 2009, Blockbuster cross-appealed the district court's decision to reduce its award of attorney fees and costs. Blockbuster also cross-appealed some of the district court's findings

of fact, which it alleged were immaterial to the court's ruling on its motion. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j) (Supp.2010).

## STANDARD OF REVIEW

¶ 18 "A contract's interpretation may be either a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent." *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985). When a district court "interprets a contract as a matter of law, we accord its construction no particular weight, reviewing its action under a correctness standard." *Id.* But if the district court "proceeds to find facts respecting the intentions of the parties based on extrinsic evidence, then our review is strictly limited." *Id.* Because the district court's interpretation of the election of remedies provision in this case was based on the words of the Contract rather than extrinsic evidence of intent, we review the district court's decision as a matter of law and accord its construction no particular weight.

¶ 19 The issue of "[w]hether a claimant has been unjustly enriched is a mixed question of law and fact." *Desert Miriah, Inc. v. B & L Auto, Inc.,* 2000 UT 83, ¶ 9, 12 P.3d 580. We will uphold the district court's factual findings unless they are clearly erroneous. *See id.* But we review the court's legal findings for correctness. *See id.* ¶ 12.

## ANALYSIS

¶ 20 The Selvigs ask us to consider three issues on appeal: first, whether the district court erred in dismissing their contractual claims; second, whether the district court erred in dismissing their unjust enrichment claim; and third, whether the district court erred in awarding Blockbuster its attorney fees. On cross-appeal, Blockbuster asks us to determine whether the district court erred in reducing the award of attorney fees and whether the district court erred in making certain findings of fact that could become relevant in the event of a remand.

¶ 21 We hold that the district court erred when it dismissed the Selvigs' contractual claims based on the election of remedies provision because this provision does not apply to a breach occasioned by a wrongful recording of a deed. We therefore remand the contractual issues to the district court, vacate the award of attorney fees, and hold that, on remand, the district court is not bound by its previous factual findings. However, we affirm the district court's dismissal of the Selvigs' unjust enrichment claim.

## I. THE DISTRICT COURT ERRED IN DISMISSING THE SELVIGS' BREACH OF CONTRACT CLAIMS

¶ 22 We first address whether the district court erred in holding that the Selvigs were not entitled to any damages under the Contract because they failed to return the earnest money deposit before filing suit. The Selvigs argue that the district court erred in relying on the election of remedies provision to dismiss their breach of contract claim because the Contract did not contemplate that the election of remedies provision would apply to a breach arising out of an improper recording of the deed. Additionally, the Selvigs argue that the district court's finding is inconsistent with the purpose behind the election of remedies provision. Blockbuster, on the other hand, argues that the Contract's election of remedies provision was intended to apply to any default under the Contract, including a default arising from an alleged improper recording of the deed. We agree with the Selvigs and hold that the district court erred in concluding that the election of remedies provision applied to bar the Selvigs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

¶ 23 "In construing a contract, the intention of the contracting parties is controlling." *Peterson v. Sunrider Corp.,* 2002 UT 43, ¶ 18, 48 P.3d 918. "In interpreting a contract, we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." *WebBank v. Am. Gen. Annuity Serv. Corp.,* 2002 UT 88,

¶ 18, 54 P.3d 1139 (alteration in original) (internal quotation marks omitted); *see also Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185 ("When determining whether the . . . language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms." (internal quotation marks omitted)). "If the language of the contract is unambiguous, the intention of the parties may be determined as a matter of law based on the language of the agreement." *Peterson*, 2002 UT 43, ¶ 18, 48 P.3d 918. If, however, the language is found to be ambiguous, the court may consider extrinsic evidence of the parties' intentions. *Id.* ¶ 19. To determine whether contractual language is ambiguous, the court may consider any relevant evidence so that it can place itself in the same position as the parties at the time the contract was entered. *Id.* A finding of ambiguity is justified only if, after reviewing all of the evidence, "the competing interpretations are reasonably supported by the language of the contract." *Daines v. Vincent*, 2008 UT 51, ¶ 31, 190 P.3d 1269 (internal quotation marks omitted).

¶ 24 In light of this rule, we review the Contract and consider the election of remedies provision in relation to the Contract as a whole to ascertain the parties' intentions. The election of remedies clause provides as follows:

> If Buyer defaults, Seller may elect to either retain the Earnest Money Deposit as liquidated damages or to return the Earnest Money Deposit and sue Buyer to enforce Seller's rights . . . . Where a Section of this Contract provides a specific remedy, the parties intend that the remedy shall be exclusive regardless of rights which might otherwise be available under common law.

¶ 25 While the election of remedies provision indicates that it applies when the buyer defaults, it does not follow that the parties intended this provision to apply to a breach occasioned by a buyer's improper recording of the deed. And reading the Contract as a whole reveals that the parties could not have

intended this result. As with most standard real estate purchase contracts, the Contract provides for the creation of an escrow account and states that the deed can be recorded only after the purchase price has been "delivered to the escrow/title company in the form of collected or cleared funds." The Contract further provides that closing will occur when the "money required to be paid under these document[s] [has] been delivered and the deed is recorded." Additionally, it provides that "Seller . . . agrees to convey such title" at closing.

¶ 26 The Contract sets forth the duties of the parties. It was the Selvigs' duty under the Contract to convey title to the Property and Blockbuster's duty under the Contract to pay the full purchase price. And the Contract provides that these duties were to be performed simultaneously at closing. In other words, the parties contemplated that a default could occur if Blockbuster tendered the full purchase price for the Property into escrow at closing and the Selvigs failed to tender title into escrow, or if the Selvigs tendered title to the Property and Blockbuster failed to tender the full purchase price. If the purchase price were tendered but title was not, the purchase price would be returned to the buyer from escrow. Similarly, if title were tendered but the purchase price was not, the deed would be returned to the seller from escrow. And the seller would have the option of either keeping the earnest money as liquidated damages or returning the earnest money and suing the buyer for specific performance.

¶ 27 The Contract does not contemplate, however, that Blockbuster could obtain the deed and record it without paying for the Property. Because the Contract did not contemplate that the buyers could obtain title to the property without full payment of the purchase price in the "form of collected or cleared funds," the parties could not have intended that the election of remedies provision could apply to a situation where the buyer recorded title to the Property without paying for it.[3]

---

3. The dissent argues that the Contract does not govern recordation of the deed. We respectfully disagree. The closing provision of the Contract

expressly provides when the deed is to be recorded. It states that the transaction shall be closed on or before September 30, 2005, and that clos-

¶ 28 Our conclusion is bolstered by the fact that the purpose of an election of remedies provision is to give the seller of property an alternative remedy in the event the buyer fails to consummate the transaction. *See Close v. Blumenthal,* 11 Utah 2d 51, 354 P.2d 856, 857 (1960) ("[T]he attempt to enforce [the election of remedies] clause of the contract is almost invariably against a purchaser who [after entering into the contract] ... decides not to buy the property."); *see also Johnson v. Jones,* 109 Utah 92, 164 P.2d 893, 895 (1946) ("There is implied in an agreement for the sale of real estate, unless a contrary intention is expressed, that the vendor shall retain title [to the property] until the balance of the purchase price is paid."). Where the election of remedies provision allows the seller to retain the earnest money deposit as liquidated damages, the amount of the earnest money deposit is in lieu of the damages the seller would incur if the buyer fails to go through with the purchase. But in this case, Blockbuster actually recorded the deed and obtained presumptive title to the Property. And by relying on the election of remedies provision of the contract to bar the Selvigs' breach of Contract claim, the district court effectively held that Blockbuster was entitled to take title to the property without paying for it because the Selvigs had failed to return the $1,000 earnest money deposit. But it would be illogical to assume that the $1,000 earnest money deposit paid by Blockbuster was intended to compensate the Selvigs for the amount of damages that they would incur if Blockbuster wrongfully recorded the deed. Indeed, interpreting the Contract in the manner urged by Blockbuster would countenance the absurd result of allowing a buyer to effectively obtain title to property for only a small fraction of the agreed upon purchase price—the amount of the earnest money deposit. Such a construction is simply not plausible because the earnest money deposit is just one part of the consideration that Blockbuster was contractually obligated to pay in order to receive title. And it would be unreasonable to require that the Selvigs return any part of the purchase price prior to filing suit, when Blockbuster had already received everything it bargained for under the Contract—title to the Property.

¶ 29 Because the election of remedies provision in the Contract does not apply to a default arising out of a wrongful recording of the deed, the district court erred in dismissing the Selvigs' contractual claims.[4] We therefore vacate the order of dismissal and remand the Selvigs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. THE DISTRICT COURT DID NOT ERR IN DISMISSING THE SELVIGS' UNJUST ENRICHMENT CLAIM

¶ 30 We next address whether the district court erred in dismissing the Selvigs' unjust enrichment claim on the ground that the parties' agreement for the purchase of the Property was covered by a written contract. "The doctrine [of unjust enrichment] is designed to provide an equitable remedy where one does not exist at law." *Am. Towers Owners Ass'n v. CCI Mech., Inc.,* 930 P.2d 1182, 1193 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 2009 UT 65, 221 P.3d 234. Therefore, where "an express contract covering the subject matter of the litigation" exists, recovery for unjust enrichment is not available. *See Mann v. Am.*

---

ing shall occur when, among other things, the deed which the seller agrees to deliver has been recorded. By recording the deed prematurely, Blockbuster breached the closing conditions of the Contract. The dissent's focus on Blockbuster's separate oral agreement not to record the deed until after delivery is misdirected because the Selvigs did not base a cause of action on any such oral agreement. Rather, the issue is whether the election of remedies provision contained in the Contract bars the Selvigs' claim for breach of that Contract.

4. Because we determine that the election of remedies provision does not apply and therefore cannot bar the Selvigs' contractual claims, it is unnecessary for us to address whether Blockbuster waived its election of remedies defense by not raising it until the close of the Selvigs' case in chief. We therefore do not address this issue. *See Summit Water Distrib. Co. v. Summit Cnty.,* 2005 UT 73, ¶ 50, 123 P.3d 437 ("Our settled policy is to avoid giving advisory opinions in regard to issues unnecessary to the resolution of the claims before us.").

*W. Life Ins. Co.,* 586 P.2d 461, 465 (Utah 1978).

¶ 31 In this case, the Contract governs the purchase and conveyance of the Property, which is the subject matter of this dispute. The Selvigs argue that the Contract does not govern this dispute because it terminated when Blockbuster failed to close by September 1, 2006. The Selvigs therefore argue that no valid contract existed when Blockbuster wrongfully recorded the deed to the Property. We disagree.

■■■■■ ¶ 32 In order to terminate a real estate purchase contract and work forfeiture on the buyer, the seller must notify the buyer of the default and provide an opportunity to cure. *Cf. First Sec. Bank of Utah, N.A. v. Maxwell,* 659 P.2d 1078, 1081 (Utah 1983) ("[I]n speaking of a forfeiture provision in a Uniform Real Estate Contract, we observe[] that such provisions are not self-executing and to enforce them some affirmative act on the part of the seller is required to notify the buyer what he must do to bring the contract current." (internal quotation marks omitted)). Furthermore, when a seller declares the buyer to be in default, he must cease to accept performance on the obligation. *See Swain v. Salt Lake Real Estate & Inv. Co.,* 3 Utah 2d 121, 279 P.2d 709, 710 (1955) ("It is fundamental that a vendor cannot claim a forfeiture and at the same time receive the purchase money."), *overruled on other grounds by Mgmt. Servs. Corp. v. Dev. Assocs.,* 617 P.2d 406 (Utah 1980). In this case, Blockbuster failed to meet the September 1, 2006, closing deadline. However, the Selvigs neither notified Blockbuster that they considered it to be in default nor made a demand of what was required to bring the Contract current. Rather, the Selvigs continued to accept the benefit of the mortgage payments made by Blockbuster for the months of September, October, and November. Because the Selvigs did not provide Blockbuster with any notice of default or indicate that they were terminating the Contract, we hold that a valid contract governing the duties of the parties in regard to the conveyance of the Property remained in existence at the time the deed was recorded. Therefore, the district court properly dismissed the Selvigs' unjust enrichment claim.

## III. ON REMAND, THE DISTRICT COURT IS NOT BOUND BY ITS FINDINGS OF FACT RELATING TO THE CONTRACTUAL CLAIMS

■■■■ ¶ 33 Immediately after the Selvigs presented their case in chief, the district court dismissed their claims pursuant to rule 41(b) of the Utah Rules of Civil Procedure. In its ruling, the district court made certain findings of fact, which Blockbuster disputes. Blockbuster filed a cross-appeal challenging these factual findings in the event that the case is remanded. Specifically, Blockbuster argues that the district court abused its discretion when it made findings of fact that were immaterial, disputed, and adverse to Blockbuster before Blockbuster had the opportunity to present its case. It argues that the district court erred because a judge may not make factual findings as to disputed issues in the context of ruling on a motion under rule 41(b). We disagree that factual findings are limited to undisputed issues in the context of a 41(b) dismissal but agree that, in this case, the district court is not bound on remand by its factual findings as they relate to the contractual claims.

¶ 34 Rule 41(b) of the Utah Rules of Civil Procedure provides that

> [a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

■■■■ ¶ 35 In *Winegar v. Slim Olson Inc.,* we stated that when a judge involuntarily dismisses a plaintiff's case under rule 41(b), a judge must make findings of fact as to whether the plaintiff has made out a prima

facie case regardless of whether the evidence regarding this issue is in dispute. 122 Utah 487, 252 P.2d 205, 207 (1953). Specifically, in making a determination under rule 41(b), a judge is not required merely to determine if the plaintiff has presented enough evidence to convince the trier of fact that he is entitled to relief. *Id.* Rather, as the ultimate trier of fact, the judge may determine whether the plaintiff has met his prima facie case. *See id.; see also 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 58, 99 P.3d 801 ("[A] trial judge may properly grant a motion to dismiss under rule 41(b) when the plaintiff has (1) failed to make out a prima facie case, or (2) when the trial judge is not persuaded by the evidence presented by the claimant." (internal quotation marks omitted)). But the fact that a trial judge is entitled to make such findings in the context of a rule 41(b) dismissal does not mean that these facts are binding on remand in the event that the dismissal is vacated.

¶ 36 Under rule 41(b), if a defendant moves for involuntary dismissal immediately after the plaintiff presents his case, the defendant does not waive the right to offer evidence in the event that the motion is not granted. *See* UTAH R. CIV. P. 41(b). Likewise, where an appellate court reverses a rule 41(b) dismissal entered at the close of the plaintiff's case in chief and remands the case to the district court for further proceedings, the defendant does not waive his right to present his case and have the judge weigh his evidence on remand.

¶ 37 Here, the district court dismissed the Selvigs' contractual and unjust enrichment claims immediately after they had presented their case in chief. Because we reverse the district court's decision to dismiss the Selvigs' contractual claims, Blockbuster is entitled on remand to present its evidence regarding the contractual claims and the district court is required to consider this evidence. Therefore, the district court is not bound by the findings of fact contained in its rule 41(b) order as they relate to the contractual claims and may alter those findings after considering the evidence that is presented on remand.

¶ 38 Because we reverse the district court's decision to dismiss the Selvigs' contractual claims, we also vacate the award of attorney fees that was predicated on the contractual provision that entitled the prevailing party to recover its costs and reasonable attorney fees. We, therefore, need not and do not address Blockbuster's argument on cross-appeal that the district court erred in reducing its award of attorney fees.

## CONCLUSION

¶ 39 We affirm the district court's dismissal of the Selvigs' unjust enrichment claim because a written contract exists, which governs the duties of the parties. Because the election of remedies provision in the Contract does not apply to a default occasioned by Blockbuster's wrongful recording of the deed, we conclude that the district court erred in relying on this provision to dismiss the Selvigs' contractual claims. We therefore vacate the dismissal and the accompanying award of costs and attorney fees and remand the contractual claims to the district court. On remand, the district court is not bound by the findings it made in its rule 41(b) order and may modify its findings according to the evidence presented.

¶ 40 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice LEE concur in Justice PARRISH's opinion.

Justice NEHRING, dissenting:

¶ 41 I reluctantly dissent. In my view, the plain language of the Contract provides that the election of remedies clause applies when a party is in default under the contract. Blockbuster was in default under the terms of the Contract when it failed to pay amounts due as required by the parties' agreements. Because Blockbuster was in default, the Selvigs were required to return Blockbuster's earnest money before bringing a suit for breach of contract. I would conclude that the district court correctly determined that by failing to return the earnest money, the Selvigs elected their remedy, and thus, the breach of contract claim was properly dismissed.

¶ 42 According to the majority, it is clear from the language of the contract that the election of remedies provision "does not apply to a default arising out of a wrongful recording of the deed."[1] The majority's analysis proceeds under the assumption that wrongful recordation is a default under the express terms of the Contract.[2] I disagree. Nothing in the Contract requires that the deed be placed in escrow or that recordation must take place at closing.[3]

¶ 43 My review of the record indicates that there are three relevant events that could govern the rights and obligations of the parties in this case: (1) the signing of the Contract, (2) the signing of the Lease to Purchase Agreement (LPA), and (3) a subsequent oral exchange between Blockbuster and the Selvigs. The first event is the signing of the Contact, a standard real estate purchase agreement entered into by the parties to govern the sale of the Inn. This Contract outlined the purchase price, payments due, and provided that closing would occur on or before September 30, 2005. The second event is the signing of the LPA. The parties entered this agreement on September 20, 2005, because closing was approaching and Blockbuster had failed to make payments as required under the terms of the Contract. This agreement modified the terms of the Contract and gave Blockbuster an additional year to satisfy its obligations under the original agreement. The third event concerns an oral exchange between the parties. After the parties signed the LPA, Blockbuster produced a warranty deed for the Property and asked the Selvigs to sign it. In exchange for the Selvigs' signature, Blockbuster orally promised that it would not file the deed until closing. This promise was not written into the LPA or incorporated into the Contract, and it may or may not be enforceable.

¶ 44 Analyzing the Selvigs' claims in light of these events, I would hold that the district court appropriately concluded that the Contract and the LPA form one governing agreement, and that under that agreement, the election of remedies clause applies to bar the Selvigs' breach of contract claim. In their complaint, the Selvigs brought three causes of action against Blockbuster: breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. The breach of contract action was based on the Contract and the LPA. The Selvigs alleged that under these agreements, Blockbuster "was obligated to pay off the balances on both mortgages by September 1, 2006," but failed to do so "as required by the agreement." In other words, the Selvigs sued Blockbuster for its default—or failure to pay the amounts due under the terms of the Contract and the LPA.

¶ 45 Blockbuster's failure to pay the amounts due as required under the Contract and the LPA is governed by the express provisions of the Contract and is properly characterized as a breach of contract claim. But in order to pursue this breach of contract claim, the Selvigs had to follow the procedures outlined in the written contract between the parties.[4] And the parties were bound by the consequences and remedies contained in the written agreements—including the election of remedies clause. This provision of the contract provides as follows:

> If Buyer *defaults*, Seller may elect to either retain the Earnest Money Deposit as liquidated damages or to return the Earnest Money Deposit and sue Buyer to enforce Seller's rights .... Where a Section of this Contract provides a specific remedy, the parties intend that the remedy

---

1. *See supra* ¶ 28.

2. *See id.* ¶ 26.

3. *See id.* ¶ 25. The provision of the standard real estate purchasing agreement governing closing states, "This transaction shall be closed on or before 9/30/05. Closing shall occur when ... Buyer and Seller have signed and *delivered to each other* (or to the escrow/title company), all documents required by this Contract ... and the deed which the Seller has agreed to deliver ... has been recorded." (emphasis added).

4. *See, e.g., Soter v. Snyder*, 3 Utah 2d 28, 277 P.2d 966, 968 (1954) ("The question depends for its answer upon the law of election of remedies. Where two inconsistent remedies, proceeding upon irreconcilable claims of right, are open to a suitor, the choice of one bars the other." (internal quotation marks omitted)).

shall be exclusive regardless of rights which might otherwise be available under common law.[5]

Under the plain language of the contract, the election of remedies clause applies when a buyer "defaults."[6] Although the term "defaults" is not expressly defined in the agreement, in the real estate purchase context, the term "defaults" at the very least, and in its most traditional sense, applies to a party's failure to pay amounts due under the agreement.[7] This is exactly what was alleged in the Selvigs' complaint. Because the Selvigs were alleging that Blockbuster was in default under the agreement, the Selvigs were bound by the election of remedies clause contained in the contract. Under this clause, the Selvigs had a choice—they could either retain the earnest money, or return the earnest money and sue to enforce their rights under the contract. By keeping the earnest money, the Selvigs elected their remedy and foreclosed their claim for breach of contract.[8]

¶ 46 But instead of focusing on Blockbuster's default as the failure to pay amounts due under the Contract and the LPA, the majority chooses to focus instead on facts not governed by the written agreements. Specifically, the majority hangs its hat on the oral exchange between Blockbuster and the Selvigs—that if the Selvigs would sign the warranty deed to the Property, Blockbuster "would not file the deed until closing."[9] Although Blockbuster's decision to prematurely record the deed was unquestionably improper, and likely forms the basis of some other noncontractual cause of action, the wrongful recordation does not give rise to a breach of contract claim under any express term of the Contract or the LPA.

¶ 47 Because I conclude that the election of remedies clause unambiguously applies to Blockbuster's default under the terms of the written contracts, I would affirm this aspect of the district court's decision. However, to the extent the Selvigs may have some non-contractual, timely cause of action arising out of the wrongful recordation of the deed, I would not foreclose the Selvigs from pursuing it.

---

5. *See supra* ¶ 23 (emphasis added).

6. *See id.* ¶ 24.

7. *See, e.g., Mgmt. Servs. Corp. v. Dev. Assocs.*, 617 P.2d 406, 408 (Utah 1980) (discussing the relevant "default" under the election of remedies provision of a standard real estate purchase contract as the party's failure to pay purchase price when due); *see also Mahmood v. Ross*, 1999 UT 104, ¶ 11, 990 P.2d 933 (describing default as failure to pay amounts due under an agreement); *Timm v. Dewsnup*, 851 P.2d 1178, 1179 (Utah 1993) (describing a "default" under a real estate purchase agreement as the failure to pay the price due under the contract); *Imlay v. Gubler*, 77 Utah 547, 298 P. 383, 384–86 (1931) (describing a party's default under a standard real estate purchase contract as failure to pay amounts when due).

8. *See, e.g., McKeon v. Crump*, 2002 UT App 258, ¶¶ 8–10, 53 P.3d 494 (noting that under the election of remedies clause contained in a standard real estate purchase contract, seller had a duty to release her interest in the earnest money deposit to the buyer before filing suit for damages); *Palmer v. Hayes*, 892 P.2d 1059, 1061–62 (Utah Ct.App.1995) (noting sellers had "an affirmative duty to release their interest in the deposit money to the [buyers] before they filed their suit for damages").

