2012 UT 3

UNITED STATES FIDELITY AND GUARANTEE CO., Plaintiff, Counterclaim Defendant and Appellant,

v.

UNITED STATES SPORTS SPECIALTY ASSOCIATION, Defendant, Counterclaimant and Appellee.

United States Sports Specialty Association, Plaintiff,

v.

Nelson, Chipman & Burt, Clifford Payne, Lewis Quigley and American Specialty Insurance Risk Services, Inc., Third–Party Defendants and Appellees.

No. 20090657.

Supreme Court of Utah.

Jan. 24, 2012.

L. Rich Humpherys, Karra J. Porter, Geoffrey C. Haslam, Barton H. Kunz II, Salt Lake City, for appellant.

Alan C. Bradshaw, Tyson B. Snow, Salt Lake City, for appellee United States Sports Specialty Association.

John A. Snow, Salt Lake City, for appellee Nelson, Chipman & Burt.

Jonathan O. Hafen, Bryan S. Johansen, Salt Lake City, William G. Passannante, Marc T. Ladd, New York, NY, Amy Bach, San Francisco, CA, for amicus United Policyholders.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 We have agreed to answer the following questions certified to us by the United States District Court for the District of Utah: (1) Does an insurer have a right to reimbursement or restitution against an insured? (2) If an insurer does have a right to reimbursement or restitution against an insured, are there any prerequisites to receiving such a right? (3) And finally, if such a right exists, does an insurer's payment in excess of a policy's limit impact any such right? Because we conclude that an insurer may obtain the right to reimbursement from its insured only when the right is expressly provided in their insurance agreement, we decline to answer the second and third certified questions.

## BACKGROUND

¶ 2 Seven-year-old Dalton Nielson suffered serious injury when he was struck in the head with a bat during an adult softball game in Lehi, Utah. The softball game was sponsored by United States Sports Specialty Association (USSSA). As a result, Dalton's parents sued USSSA and several other defendants.

¶ 3 At the time of the accident, USSSA was insured by United States Fidelity and Guarantee Co. (USF & G). The policy had a liability coverage policy limit of approximately $2 million. In the suit, USF & G assumed the defense of its insured, USSSA. The case went to trial and resulted in a jury verdict of roughly $6.1 million against USSSA.

¶ 4 USF & G moved to stay execution proceedings and block attempts to collect the judgment. It also filed various other post-judgment motions on USSSA's behalf. The court held a hearing on the motion to stay. It stayed execution proceedings pending the outcome of the other post-trial motions on the condition that a bond for the entire

amount of the judgment be posted within five business days of the hearing. USF & G initially posted a bond in the amount of $2,033,057.92, the amount of coverage provided by the policy. However, USSSA demanded that USF & G satisfy the entire judgment. It alleged that USF & G had conducted its defense in bad faith, as demonstrated by conflicts of interest, failure to communicate, refusal to accept settlement offers within policy limits, and other misconduct. In response to USSSA's demand, USF & G offered to pay the bond for the entire judgment if USSSA would agree to a full reservation of rights between the parties. USSSA refused to agree to the reservation of rights and insisted that USF & G pay the entire amount. USSSA asserted that if USF & G did not pay the bond, it would incur further injury from USF & G's bad faith.

¶ 5 After extensive correspondence between USF & G and its insured, USF & G posted an additional bond of $4,186,471 to secure the remainder of the judgment just before the five-day deadline passed. USF & G simultaneously filed an action in federal court. It sought judicial declaration that it could not be compelled to pay more than the $2 million policy limit. USF & G asserts that it posted the additional $4 million dollar bond under a unilateral reservation of rights. USSSA contends that it never agreed to any reservation, and it filed a counterclaim asserting bad faith against USF & G in the Nielsons' suit.

¶ 6 Following the stay, the case proceeded to mediation with the Nielsons. USSSA insisted that USF & G pursue a "global" settlement and objected to any settlement with the Nielsons that required USSSA to pay out-of-pocket or created a claim of reimbursement for USF & G against USSSA as its insured. Despite this, USF & G "proceed[ed] with mediation based on its own authority." USF & G ultimately settled the judgment for $4,825,000 under a "unilateral reservation of rights" that purported to allow USF & G to seek reimbursement from USSSA for the

approximately $2.8 million of the settlement that exceeded policy limits. As a result, USSSA refused to sign the settlement. Nonetheless, USF & G paid the Nielsons, and a satisfaction of judgment was filed in the underlying suit.

¶ 7 After the settlement, USF & G amended its complaint in the United States District Court seeking restitution for the amount of the judgment bonded and paid that exceeded the policy limits. USSSA amended its answer to include an affirmative defense that payments beyond policy limits fit within the "voluntary payment" exception to unjust enrichment.

¶ 8 USSSA moved for partial summary judgment. It contended that USF & G has no right to restitution against its insured for the amounts paid in excess of policy limits. USF & G opposed the motion and filed a cross-motion to strike USSSA's assertion that USF & G paid the judgment voluntarily. After oral argument, the United States District Court certified to this court the questions of law that control the parties' motions. We accepted the certification to answer the following: (1) Does an insurer have a right to reimbursement or restitution against an insured? (2) If an insurer does have a right to reimbursement or restitution against an insured, are there any prerequisites to receiving such a right? (3) If such a right exists, does an insurer's payment in excess of a policy's limit impact any such right? We have jurisdiction under Utah Code section 78A–3–102(1).

## STANDARD OF REVIEW

¶ 9 "A certified question from the federal district court does not present us with a decision to affirm or reverse a lower court's decision; as such, traditional standards of review do not apply. On certification, we answer the legal questions presented without resolving the underlying dispute."[1]

## ANALYSIS

¶ 10 USF & G urges us to apply an approach proposed in the *Restatement (Third)*

---

1. *Iverson v. State Farm Mut. Ins. Co.,* 2011 UT 34, ¶ 8, 256 P.3d 222 (internal quotation marks omitted).

*of Restitution and Unjust Enrichment* to an insurer's overpayment of benefits under a policy. The tentative draft provides that

> [i]f one party to a contract demands ... performance that is not in fact due by the terms of the[ ] agreement, ... the party on whom the demand is made may render such performance ... with [a] reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement.[2]

Accordingly, USF & G advocates the analysis undertaken in *Blue Ridge Insurance Co. v. Jacobsen*, which permits an insurer to seek reimbursement from its insured for noncovered payments to a plaintiff when (1) the insurer timely and expressly informs its insured that the insurer is reserving its rights under the policy; (2) the insurer notifies the insured of its intent to make the potentially noncovered payment; and (3) the insurer expressly offers the insured the ability to assume its own defense of the underlying suit if it objects to the payment.[3] We do not agree that the Restatement and the analysis set forth in *Blue Ridge* are consistent with Utah law.

¶ 11 USF & G observes that "restitution, also referred to as a claim for unjust enrichment, has long been recognized as a valid cause of action in Utah." As such, there is ample case law defining the limits of a claim of unjust enrichment. Under our precedent, a claim of unjust enrichment cannot arise where there is an express contract governing the "subject matter" of a dispute.[4] Because an insurer's right to reimbursement from an insured substantially affects the relative levels of risk assumed by each, Utah law does not allow an insurer to seek reim-

bursement or restitution through an extracontractual claim of unjust enrichment. Instead, we hold that an insurer's right to reimbursement from an insured must be expressly provided in an insurance policy before it can be enforced. Given this holding, it is unnecessary to respond to the second and third certified questions regarding prerequisites to a claim for restitution and the effect of payment in excess of policy limits.

## I. A CLAIM OF UNJUST ENRICHMENT CANNOT EXIST WHERE THERE IS AN EXPRESS CONTRACT GOVERNING THE SUBJECT MATTER OF THE DISPUTE

¶ 12 Restitution is distinct from a contractual right to reimbursement. More precisely, restitution is an extracontractual remedy for a claim of unjust enrichment. To establish a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred ...; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention [of the benefit] by the conferee ... under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[5] The doctrine of unjust enrichment "developed to remedy injustice when other areas of the law could not."[6] Once a plaintiff establishes each of its elements, "the remedy is one of restitution designed to restore to a plaintiff a benefit unjustly enjoyed by a defendant."[7]

¶ 13 Because "[unjust enrichment] is designed to provide an equitable remedy where one does not exist at law,"[8] the doctrine may be invoked "only when no express contract is present"[9] that governs the remedies available to an injured party. However, "where an express contract cover-

**2.** Restatement (Third) of Restitution and Unjust Enrichment § 35 (2011).

**3.** 25 Cal.4th 489, 106 Cal.Rptr.2d 535, 22 P.3d 313, 320–21 (2001).

**4.** *Selvig v. Blockbuster Enters., LC*, 2011 UT 39, ¶ 30, 266 P.3d 691 (internal quotation marks omitted).

**5.** *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754 (internal quotation marks omitted).

**6.** *Id.* (internal quotation marks omitted).

**7.** *Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1192 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234.

**8.** *Selvig v. Blockbuster Enters., LC*, 2011 UT 39, ¶ 30, 266 P.3d 691 (alteration in original) (internal quotation marks omitted).

**9.** *TruGreen Cos., LLC, v. Mower Bros., Inc.*, 2008 UT 81, ¶ 18, 199 P.3d 929.

ing the subject matter of the litigation exists, recovery for unjust enrichment is not available." [10] To allow such a cause of action in the face of an enforceable contract governing the parties' rights would effectively add or modify terms for which they had not bargained.[11]

¶ 14 "An insurance policy is merely a contract." [12] Thus, the central question bearing on the availability of an equitable remedy like restitution to an overpaying insurer is whether the insurer's right to reimbursement is within the subject matter of the insurance policy, such that the policy is the exclusive authority that "govern[s] the rights and obligations of the parties relating to the conduct at issue." [13] If reimbursement is the type of right that should be expressly provided for in a policy had the parties intended it, there cannot also be an extracontractual right to restitution through a claim of unjust enrichment.

## II. AN INSURER'S RIGHT TO REIMBURSEMENT FROM AN INSURED AFFECTS THE PARTIES' RISK RELATIONSHIP AND THEREFORE MAY ONLY ARISE UNDER THE EXPRESS TERMS OF THEIR INSURANCE CONTRACT

¶ 15 "As a society, we depend on insurance. At its core, insurance is a product designed to manage risk. We have an interest in protecting people who endeavor to use the insurance system to manage this risk. We want them to make informed decisions." [14] " 'The very nature and existence of insurance revolves around understanding and manipulating the concept of risk: risk management, risk control, risk transference, risk distribution, [and] risk retention.' " [15]

¶ 16 Before any insurance product may legitimately assert that it confers a general social benefit and is not simply an agreement, an insured must have a stake in the subject of the risk allocation—an insurable interest—and assurances that the parties to the wager may make informed decisions about its terms. To this end, the legislature has enacted the Utah Insurance Code.[16] Among its various protections, the Insurance Code requires that parties to an insurance contract bargain for each term and express their agreement in written form. Specifically, the Code states that "an insurance policy may not contain any agreement or incorporate any provision not fully set forth in the policy or . . . made a part of the policy at the time of its delivery." [17] The purpose of this requirement "is to ensure that the entire insurance contract is contained in one document

---

**10.** *Selvig,* 2011 UT 39, ¶ 30, 266 P.3d 691 (internal quotation marks omitted); *see also Ashby v. Ashby,* 2010 UT 7, ¶ 14, 227 P.3d 246 ("A claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue." (footnote omitted)); *Am. Towers,* 930 P.2d at 1193 ("The doctrine is designed to provide an equitable remedy where one does not exist at law. In other words, if a legal remedy is available . . . the law will not imply the equitable remedy of unjust enrichment."); *Mann v. Am. W. Life Ins. Co.,* 586 P.2d 461, 465 (Utah 1978) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation.").

**11.** *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.,* 246 S.W.3d 42, 50 (Tex.2008) ("[W]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.... To recognize an equitable right to reimbursement would require

us to rewrite the parties' contract [or] add to its language." (third alteration in original) (internal quotation marks omitted)).

**12.** *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.,* 2011 UT 49, ¶ 8, 266 P.3d 733 (internal quotation marks omitted).

**13.** *Ashby,* 2010 UT 7, ¶ 14, 227 P.3d 246.

**14.** *Iverson v. State Farm Mut. Ins. Co.,* 2011 UT 34, ¶ 19, 256 P.3d 222.

**15.** *Bd. of Educ. of Jordan Sch. Dist. v. Hales,* 566 P.2d 1246, 1247 (Utah 1977) (quoting *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.,* 418 F.Supp. 56, 58 (N.D.Tex.1976)).

**16.** *Iverson,* 2011 UT 34, ¶ 20, 256 P.3d 222 (citing "increased education and informed decision making" as one of the legislature's goals in the Insurance Code).

**17.** Utah Code § 31A–21–106(1)(a).

so that the insured can determine from the policy exactly what coverage he or she has."[18] The written policy evinces a "meeting of the minds" between the insurer and the insured.[19] The writing outlines the material terms and obligations that may be enforced under the policy,[20] and it defines the risk relationship the parties have established.[21]

¶ 17 "Generally ... an insurer may not recover against its own insured ... under [a] policy."[22] The right of an insurer to recover reimbursement from its insured distorts the allocation of risk unless it has been specifically bargained for. This altered relationship may affect the motives, interests, and incentives that arise between the insurer and the insured under a claim for coverage.[23] Thus, an insurer's claim to an unbargained-for right to reimbursement from its insured presents a perverse manipulation of risk that has no place in our law. As a result, the right to reimbursement must be specifically bargained for and set forth in writing under Utah Code section 31A–21–106(1)(a) before it may be enforced.[24]

¶ 18 Conspicuously absent from USF & G's briefing on this question is any mention of the Utah Insurance Code. USF & G provides no argument to explain why an insurer's right to recover reimbursement from its insured should not be governed by Utah Code section 31A–21–106(1)(a) and the requirement that all terms of an insurance policy be set forth in writing. Given the substantial shift in the risk relationship that accompanies a right to reimbursement, we are unable to conceive of a reason that the unequivocal statutory language should not govern. Therefore, we conclude that an insurer's right to recover reimbursement from an insured may only arise, if at all, under the written terms of their insurance policy.

¶ 19 USF & G argues that without an unbargained-for extracontractual cause of action that will allow an insurer to recoup overpayments from an insured, insurers are placed in an "untenable" position. It contends that this approach coerces insurers to indemnify noncovered claims because "an insured could demand [payment of] a settlement, claiming it will incur significant damages otherwise and threatening to assert bad faith, while simultaneously refusing to allow the insurer to seek reimbursement of payments beyond the scope of the policy." This argument has no merit.

¶ 20 A threat of a bad faith claim should have little influence on an insurer if it has fulfilled its obligations under the policy. Bad faith is merely the inverse of the implied covenant of good faith and fair dealing that inheres in all insurance contracts.[25] The covenant imposes a duty "not to intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract and to ... act consistently with the agreed common purpose and the justified expectations of the other party."[26] In the insurance context, the "implied

---

**18.** *Cullum v. Farmers Ins. Exch.*, 857 P.2d 922, 925 (Utah 1993).

**19.** *See Pingree v. Cont'l Grp. of Utah, Inc.*, 558 P.2d 1317, 1321 (Utah 1976) ("A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced." (internal quotation marks omitted)).

**20.** *Id.*

**21.** *See Iverson*, 2011 UT 34, ¶ 23, 256 P.3d 222 (explaining that a "new policy" arises when "material changes are made to the terms of an existing insurance contract that alter the risk relationship between the insurer and the insured").

**22.** *Hales*, 566 P.2d at 1247.

**23.** *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 46–47 (explaining that an extracontractual right to restitution may "foster[ ] conflict and distrust in the relationship between an insurer and its insured" (internal quotation marks omitted)).

**24.** *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236 (Utah 1985) ("[P]ublic policy requires that persons purchasing ... policies are entitled to be informed, in writing, of the essential terms of insurance contracts.").

**25.** *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798, 801 (Utah 1985).

**26.** *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 27, 56 P.3d 524 (first alteration in original) (internal quotation marks omitted).

covenant of good faith [and fair dealing] contemplates … that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."[27] Given that an "insurer is in the business of analyzing and allocating risk[,] [it] is in the best position to assess the viability of [these] coverage dispute[s]."[28] If an insurer acts reasonably in its evaluation of a claim, it cannot be liable for violating the covenant, even if the insurer initially denies a claim that is later determined to be covered by the policy.[29] Thus, an insurer who acts reasonably in fulfilling its obligations under an insurance policy has no reason to fear a bad faith suit, and an insured's demand that the insurer pay more than is due under the policy will not alter this duty.

## CONCLUSION

¶ 21 Under Utah law, an insurer may not seek restitution based on the extracontractual theory of unjust enrichment where there is an express contract governing the "subject matter" of the dispute. An insurance policy is a contract that defines the risk relationship of the insurer and the insured. The right to reimbursement would alter this risk relationship, and therefore the right falls squarely within the "subject matter" of the policy. As a result, there can be no extracontractual right to restitution between the insurer and its insured, and only the express terms of a policy create an enforceable right to reimbursement. Because the right to reimbursement arises only from the express terms of an insurance contract, it is unnecessary for us to respond to the remaining certified questions.

Justice NEHRING authored the opinion of the Court, in which Associate Chief Justice DURRANT, Justice PARRISH, Justice LEE, and District Judge BRUCE C. LUBECK joined.

27. *Id.* (internal quotation marks omitted).

28. *Tex. Ass'n of Cntys. Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 135 (Tex.2000).

Having recused herself, Chief Justice DURHAM did not participate herein. District Judge BRUCE C. LUBECK sat.

29. *Prince*, 2002 UT 68, ¶¶ 27–28, 56 P.3d 524; *see also Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 24, 133 P.3d 428 ("If a claim brought by an insured against an insurer is fairly debatable, failure to comply with the insured's demands cannot form the basis of bad faith.").