*This opinion is subject to revision before final Publication in the Pacific Reporter*

**2016 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH REPUBLICAN PARTY, and
UTAH DEMOCRATIC PARTY,
*Plaintiffs,*

*v.*

LT. GOVERNOR SPENCER J. COX,
*Defendant.*

No. 20160077
Filed April 8, 2016

On Certification from the
United States District Court for the District of Utah
The Honorable David Nuffer
Case No. 2:2-cv-00876

Attorneys:

Marcus R. Mumford, Salt Lake City,
Christ Troupis, Eagle, Idaho,
for plaintiff Utah Republican Party,

Troy L. Booher, Charles A. Stormont, David Billings,
Salt Lake City, for plaintiff Utah Democratic Party,

Sean D. Reyes, Att'y Gen., David N. Wolf, Asst. Att'y Gen.,
Parker Douglas, Salt Lake City, for defendant

PER CURIAM:

¶1 Pursuant to Utah Code section 78A-3-102(1), this court has accepted the following certified questions of law from the United States District Court for the District of Utah:

1. In interpreting Utah Code § 20A-9-101(12)(d), § 20A-9-406(3) and § 20A-9-406(4), does Utah law require that a Qualified Political Party (QPP) permit its members to seek its nomination by "either" or "both" of the methods set forth in § 20A-9-407 and § 20A-9-408, or may a QPP preclude a member from seeking the party's nomination by gathering signatures under § 20A-9-408?

2. If a registered political party (RPP) that has selected to be designated as a Qualified Political Party (QPP) fails to satisfy the requirements of a QPP, must the Lieutenant Governor treat that political party as a RPP under Utah law?

We address the first question, but have determined that the second is not ripe and therefore decline to respond, as explained below.

## STANDARD OF REVIEW

¶2    "'When a federal court certifies a question of law to this court, we are not presented with a decision to affirm or reverse . . . [and thus] traditional standards of review do not apply.' Rather, 'we answer the legal questions presented without resolving the underlying dispute.'" *Ray v. Wal-Mart Stores, Inc.*, 2015 UT 83, ¶ 8, 359 P.3d 614 (alterations in original) (citations omitted).

## ANALYSIS

### I. THE PLAIN LANGUAGE OF SECTION 20A-9-101 REQUIRES THAT QPP PARTY MEMBERS MAY CHOOSE THE METHOD OF CANDIDACY QUALIFICATION

¶3    Section 20A-9-101(12)(d) of the Utah Code reads as follows:

(12) "Qualified political party" means a registered political party that:

. . .

(d) permits a member of the registered political party to seek the registered political party's nomination for any elective office by the member choosing to seek the nomination by either or both of the following methods:

(i) seeking the nomination through the registered political party's convention process, in accordance with the provisions of Section 20A-9-407; or

(ii) seeking the nomination by collecting signatures, in accordance with the provisions of Section 20A-9-408 . . . .

¶4    We begin our construction of this portion of the statute by examining its plain language. We conclude that its contents, including its grammatical structure, clearly evince the legislature's meaning: to meet the definitional requirements of a QPP, a political party must permit its members to seek its nomination by "choosing to seek the nomination by either or both" the convention and the signature process. The Utah Republican Party has offered two basic arguments in opposition to this interpretation of the statute's plain

language: (1) the language actually permits the party, not the member, to choose either or both of the methods; and (2) a contrary interpretation is inconsistent with Utah Code section 20A-9-401(2) and the canon of constitutional avoidance.

¶5   We cannot accept the Republican Party's first assertion—it simply ignores the structure of the statutory language "permits a member" and "by the member choosing to seek the nomination by . . . ." Our reading is also consistent with the language of Utah Code section 20A-9-406(3), which provides that "[t]he following provisions apply to a qualified political party: . . . an individual may only seek the nomination of the qualified political party by using a method described in Section 20A-9-407, Section 20A-9-408, or both." Utah Code section 20A-9-406(4) further provides that "the qualified political party shall comply with the provisions of Sections 20A-9-407, 20A-9-408, and 20A-9-409." The Republican Party's position is not consistent with this language.

¶6   Utah Code section 20A-9-401, on which the Republican Party also relies, contains two provisions:

> (1) This part shall be construed liberally so as to ensure full opportunity for persons to become candidates and for voters to express their choice.
>
> (2) This part may not be construed to govern or regulate the internal procedures of a registered political party.

The Republican Party argues that our plain language construction of section 20A-9-101(12)(d) would violate paragraph (2) above by governing or regulating its internal procedures. We disagree. The statute does not require the Republican Party to seek certification as a qualified political party, and it does not purport to mandate the adoption of any provisions in its constitution, bylaws, rules, or other internal procedures. A registered political party that chooses to function as such incurs no obligation under subsection (12)(d). However, if a party seeks certification as a QPP, it must comply with the statute's requirements. This does not amount to internal control or regulation of the party by the State.

¶7   Finally, we reject the Republican Party's argument that we should avoid an unconstitutional interpretation of section 20A-9-101(12)(d) by adopting the Republican Party's reading of the statute. As a preliminary matter, we harbor some doubt as to whether the Republican Party has raised any legitimate constitutional arguments that the State may not regulate the election process and favor particular measures to increase access to the ballot.

*See Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) ("We have recognized, of course, that States have a major role to play in structuring and monitoring the election process, including primaries. . . . We have considered it 'too plain for argument,' for example, that a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." (citations omitted)). However, we need not address the merits of the Republican Party's constitutional claims. "[F]or the constitutional avoidance canon to even apply, 'the statute must be genuinely susceptible to two constructions' . . . ." *Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 24, 332 P.3d 900 (citation omitted). As noted above, there is no ambiguity in section 20A-9-101(12)(d) that would trigger resort to the canon of constitutional avoidance.

## II. THE CERTIFIED QUESTION REGARDING THE LIEUTENANT GOVERNOR'S OBLIGATIONS IS HYPOTHETICAL AND NOT RIPE FOR DECISION

¶8 Notwithstanding our acceptance of the second certified question, our review of the record and the parties' arguments in this matter persuade us that it is purely hypothetical and not ripe for review. Two of the parties—the Lieutenant Governor and the Republican Party—conceded this lack of ripeness at oral argument.

¶9 At present there are multiple options available to the Republican Party once this court's interpretation of the QPP statute is published, and it is not clearly established in the record which of those the party will choose. According to the February 11, 2016 order of the federal district court, the Chairman of the Utah Republican Party sent a letter to the Lieutenant Governor in December 2015 declaring that "it would restrict its candidate-selection procedures to the convention method, thereby prohibiting any URP candidate from gathering signatures." The letter cited by the federal court does not refer to any process by which the Utah Republican Party could or would revoke the membership of a non-compliant candidate.

¶10 More recently, however, counsel for the Republican Party in this case made the following statement to the federal district court on February 24, 2016: "[I]f the state law says that we have to allow both routes and if that is what the Supreme Court decides and if we have elected to be a QPP, then we would have to figure a way how to change our constitution and by-laws to conform to the state law." Thus at different times and through different representatives, the Republican Party has offered differing and hypothetical indications of its future behavior. We are disinclined to offer an advisory opinion on the future obligations of the Lieutenant Governor, where

such advice would have to account for predicted future behavior of the party. There is no certainty or even likelihood as to what that behavior will be.

¶11 We note further that in essence the Utah Democratic Party has asked us, on a certified question of law, for relief in the nature of an extraordinary writ—to order the Lieutenant Governor to take action based on ambiguous statements of intent by different representatives of the Republican Party. Such relief, premised on hypothetical future facts, is inappropriate in this procedural setting. If the Republican Party chooses to comply with the requirements of the QPP statute as confirmed in this opinion, the relief sought by the Democratic Party (i.e., to require the Lieutenant Governor to declare the Republican Party a "registered political party" ineligible for QPP status) will be moot. If the Republican Party chooses otherwise, perhaps by actually ejecting a member from the party, there may emerge an actual injury, conveying standing to seek relief in an appropriate forum. In the meantime there is no controversy ripe for resolution, and no basis for mandating future actions by the Lieutenant Governor.

## CONCLUSION

¶12 Utah Code section 20A-9-101(12)(d) requires that, to be a QPP, a registered political party must permit its members to seek access to nomination for electoral office by either or both the signature-gathering method or the convention method. As to the Lieutenant Governor's obligations should a political party fail to do so in the future, we decline to address that question for lack of ripeness.

———————————