Chief Justice Durrant, opinion of the Court:
 

 Introduction
 

 ¶ 1 This certified question emerges from a number of cases pending before several federal district courts concerning ownership of certain rights of way claimed by the State of Utah and several of its counties pursuant to Revised Statute 2477. The federal courts ask that we determine whether Utah Code section 78B-2-201(1) and its predecessor are statutes of limitations or statutes of repose. We hold that the plain language of both versions of the statute reveals them to be statutes of repose.
 
 [1]
 
 The application of this interpretation to the State's R.S. 2477 rights of way leads to the result that the State effectively and inevitably lost title to any such rights of way after seven years without any opportunity to prevent such loss. This result-the automatic expiration of the State's title to R.S. 2477 rights of way-is absurd and could not have been intended by the legislature, given that for most of R.S. 2477's history, no cause of action existed in the law to protect rights granted under R.S. 2477, and even after a cause of action was statutorily created, it was wholly contingent on the federal government's decision to dispute a claimed right of way. Because of the absurdity that results from applying section 201 and its predecessor as statutes of repose in this context, we construe these statutes as statutes of limitations with respect to R.S. 2477 right of way claims.
 

 Background
 

 ¶ 2 This case concerns the interrelationship of four separate statutes: Revised Statute 2477, the Federal Land Policy and Management Act, the Quiet Title Act, and Utah Code section 78B-2-201(1). The first statute, R.S. 2477, was enacted in 1866 to facilitate access to mining deposits located under federal lands. The statute provides "[t]hat the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."
 
 [2]
 
 In short, R.S. 2477 is a "standing offer of a free right of way over the public domain."
 
 [3]
 
 On October 21, 1976, Congress repealed R.S. 2477 with the Federal
 Land Policy and Management Act (FLPMA). Accordingly, if a claimant could prove that it had "accepted" a right of way prior to the repeal date, the claimant had an established and perfected title to the right of way. Under Utah law, "[a]cceptance of an R.S. 2477 right of way ... requires continuous public use for a period of ten years."
 
 [4]
 

 ¶ 3 Although R.S. 2477 granted title to rights of way by operation of law-no suit or other action was required to establish title-a claimant can only protect its title to the right of way by filing suit against the United States under the federal Quiet Title Act, 28 U.S.C. section 2409a (QTA).
 
 [5]
 
 The QTA contains its own statute of limitations, providing state and county claimants twelve years to assert a claim once the cause of action has accrued.
 
 [6]
 
 Significantly, a claimant must wait until title is "disputed" before bringing a claim under the QTA.
 
 [7]
 

 ¶ 4 To protect their alleged title to certain rights of way, Kane County, Garfield County, and the State of Utah (collectively, State or State Parties) filed separate lawsuits in 2011 against the United States. In the proceedings giving rise to the certified question, Kane County, Garfield County, and the State claim 1,510 rights of way. In addition to those proceedings, the State and various counties have initiated more than 20 separate cases to perfect title to several thousand more R.S. 2477 rights of way. There are accordingly now multiple cases pending before multiple judges of the Utah federal district court regarding at least 12,000 claimed R.S. 2477 rights of way, with each right of way claim involving unique facts.
 
 [8]
 

 ¶ 5 On June 27, 2014, the Southern Utah Wilderness Alliance (SUWA), which acts as a limited permissive intervenor in the Kane County and Garfield County cases, filed a memorandum with the United States District Court in support of the United States' Motion for Partial Dismissal, arguing that Utah Code section 78B-2-201 and its predecessor are seven-year statutes of repose that began to run as to each individual right of way when the State first accepted the road pursuant to R.S. 2477. Because the State could not have obtained an R.S. 2477 right of way later than October 21, 1976-the date Congress enacted the FLPMA and repealed R.S. 2477-SUWA argued that the State was required to assert claims under the QTA no later than 1983, seven years after October 21, 1976. The federal district courts decided that section 201 and its predecessor could prove dispositive in the proceedings. Consequently, they certified to us the limited legal question of whether section 78B-2-201 and its predecessor are statutes of repose or statutes of limitations within this context.
 

 Standard of Review
 

 ¶ 6 As noted, this case comes to us by certified question emerging from a number of proceedings before several judges of the United States District Court for the District of Utah. "A certified question from the federal district court does not present us with a decision to affirm or reverse a lower court's decision; as such, traditional standards of review do not apply."
 
 [9]
 
 Accordingly, we merely answer the question presented,
 leaving "resolution of the parties' competing claims and arguments ... up to the federal courts, which of course retain jurisdiction to decide [the] case."
 
 [10]
 
 We have jurisdiction pursuant to Utah Code section 78A-3-102(1) and article VIII, section 3 of the Utah Constitution.
 

 Analysis
 

 ¶ 7 The certified question asks whether Utah Code section 78B-2-201(1) and its predecessor are statutes of limitations or statutes of repose. The predecessor to section 201(1), which was in effect from the time it was enacted in 1872 until 2008, provided as follows:
 

 [1] The state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the state to the same, unless:
 

 [a] such right or title shall have accrued within seven years before any action or other proceeding for the same shall be commenced; or
 

 [b] the state or those from whom it claims shall have received the rents and profits of such real property, or some part thereof, within seven years.
 
 [11]
 

 The legislature amended the statute in 2008 to read:
 

 [1] The state may not bring an action against any person for or with respect to any real property, its issues or profits, based upon the state's right or title to the real property, unless:
 

 [a] the right or title to the property accrued within seven years before any action or other proceeding is commenced; or
 

 [b] the state or those from whom it claims received all or a portion of the rents and profits from the real property within the immediately preceding seven years.
 
 [12]
 

 The certified question asks us to interpret these two versions of the statute and determine whether they should be construed as statutes of repose or statutes of limitations.
 
 [13]
 

 ¶ 8 Although not directly addressed in the certified question, two bills passed in 2015 bear on our decision. First, the legislature again amended section 201 to add a new subsection, though it left the remainder of the statute-including the portions relevant to our discussion today-unchanged. This new subsection states that "[t]he statute of limitations in this section runs from the date on which the state or those from whom it claims received actual notice of the facts giving rise to the action."
 
 [14]
 
 This amendment was expressly made retroactive to March 12, 1953.
 
 [15]
 
 The second bill passed in 2015 resulted in section 78B-2-118. This new statute states that "[a]ctions against the federal government regarding real property and that are subject to the federal Quiet Title Act ... do not expire under this chapter."
 
 [16]
 
 This statute was also made retroactive to October 25, 1972.
 
 [17]
 

 ¶ 9 There are three main issues raised by the parties in response to the certified question: first, whether we should even address the certified question due to the possibility of
 issuing an advisory opinion; second, whether, using our normal tools of statutory interpretation, we should interpret section 78B-2-201 and its predecessor as statutes of limitations or statutes of repose; and third, if we interpret these statutes as statutes of repose, whether we should reform the statutes under our absurdity doctrine. We address each issue in turn and conclude that we should address the question on its merits, and that though the plain language of both iterations of the statute renders them statutes of repose, the result of applying such an interpretation to the State's R.S. 2477 rights of way works such an overwhelmingly absurd result that we construe the statutes as statutes of limitations as to such claims.
 

 I. We Will Answer the Certified Question, Leaving Resolution of How and Whether Our Interpretation Applies to the Underlying Cases to the Federal Courts
 

 ¶ 10 Prior to interpreting section 78B-2-201 and its predecessor, we first address whether we should decline to answer the certified question. The State has advanced several reasons why our interpretation of these statutes does not apply to the underlying case: (1) the 2015 bills amending section 201 and adding section 78B-2-118 are retroactive and control the litigation;
 
 [18]
 
 (2) section 78B-2-102 requires the courts to apply the QTA's twelve-year statute of limitations instead of the one found in section 201 and its predecessor;
 
 [19]
 
 (3) the limitation found within the statutes at issue applies only to suits by "the state" against a "person," which excludes suits by counties against the federal government;
 
 [20]
 
 and (4) article XX, section 1 of the Utah Constitution precludes the application of either of the statutes at issue.
 
 [21]
 
 Thus, according to the State, because the determination of whether section 78B-2-201 and its predecessor are statutes of repose or statutes of limitations will not affect the outcome of the case for some or all of these reasons, we should avoid issuing an advisory opinion and refuse to answer the certified question. The United States and SUWA challenge each of the reasons propounded by the State, arguing that none of them justifies a refusal to answer the certified question. Although it appears that the arguments raised by each of the parties have some merit, the existence of arguments about the ultimate applicability of section 201 or its predecessor to the underlying cases in light of these other statutes or constitutional provisions-and hence the applicability of our interpretation of the actual statutes at issue-does not mean that we should refuse to answer the certified question.
 

 ¶ 11 "On certification, we answer the legal questions presented
 
 without resolving the underlying dispute
 
 ."
 
 [22]
 
 Because traditional
 standards of review do not apply, we are not called upon to review the federal court's conclusions of law or fact.
 
 [23]
 
 The district courts involved in these cases stated in the Order of Certification that section 78B-2-201 and its predecessor were potentially controlling and dispositive of the R.S. 2477 cases. They did so even after receiving the State's suggestion of mootness based on section 118.
 
 [24]
 
 And although it is not clear whether the federal district courts had the opportunity to address all of the arguments raised by the State, the United States, and SUWA, those courts' conclusion that these statutes could be dispositive is a legal conclusion that we are not in a position to review on certification and must accept for purposes of answering the certified question.
 

 ¶ 12 With the exception of the question of whether the United States is a "person" for purposes of section 201 and its predecessor,
 
 [25]
 
 what the State is asking us to do
 in response to the certified question is to essentially ignore the specific question asked-a question of statutory interpretation-and instead address myriad questions about the future application of our interpretation. This is inappropriate.
 
 [26]
 
 Our job "is to resolve disputed questions of state law in a context and manner
 
 useful
 
 to the resolution of a pending federal case."
 
 [27]
 
 To be sure, we appropriately consider the specific circumstances and particular context of the underlying case when answering a certified question, which helps ensure that we are not issuing an abstract opinion on a matter of interest to the federal courts.
 
 [28]
 
 But though our answer should "facilitat[e] the disposition of the underlying federal case," we have recognized "that our opinion on certification will [not] itself resolve the underlying federal case. The resolution of the parties' competing claims and arguments will be up to the federal courts, which of course retain jurisdiction to decide this case under the law as they see it."
 
 [29]
 
 Thus, although the district courts' "decision will be informed by our resolution of the state law issues presented," "[t]hose courts retain the independent authority to decide
 
 whether and to what extent to apply our law
 
 or to recognize limitations on or caveats to it."
 
 [30]
 

 ¶ 13 Our recognition that the federal courts retain the authority to decide "whether ... to apply our law," especially when it
 intersects with federal law as it does here,
 
 [31]
 
 necessarily entails a recognition that our answer to a certified question may not always end up being dispositive. This has not prevented us from answering certified questions in the past, and it does not require us to decline to answer the question certified to us today.
 
 [32]
 
 Accordingly, we now turn to a discussion of the certified question: whether section 78B-2-201 and its predecessor are statutes of limitations or statutes of repose. And under the standard discussed above, we answer this question within the context of the particular circumstances in which the question arose-the State's claims to rights of way under R.S. 2477.
 

 II. The Plain Language of Both Iterations of the Statute Unmistakably Renders Them Statutes of Repose
 

 ¶ 14 The federal district courts have asked us to decide whether Utah Code section 78B-2-201 and its predecessor are statutes of limitations or statutes of repose. Section 201, prior to its amendment in 2015,
 
 [33]
 
 states in its entirety:
 

 [1] The state may not bring an action against any person for or with respect to any real property, its issues or profits, based upon the state's right or title to the real property, unless:
 

 [a] the right or title to the property accrued within seven years before any action or other proceeding is commenced; or
 

 [b] the state or those from whom it claims received all or a portion of the rents and profits from the real property within the immediately preceding seven years.
 
 [34]
 

 The predecessor to section 201 read as follows:
 

 [1] The state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the state to the same, unless:
 

 [a] such right or title shall have accrued within seven years before any action or other proceeding for the same shall be commenced; or
 

 [b] the state or those from whom it claims shall have received the rents and profits of such real property, or some part thereof, within seven years.
 
 [35]
 

 The language found in subsection (1)(a) of both versions of the statute-"right or title ... accrued within seven years before any action or other proceeding [is] commenced"-controls this issue. The question is whether this language means that the State cannot assert a cause of action related to real property except within the first seven years after the accrual of its right or title to the property-a statute of repose-or whether it means that the State cannot bring suit except within seven years after the accrual of a
 cause of action based on its right or title to the real property-a statute of limitations.
 

 ¶ 15 "When interpreting a statute, it is axiomatic that this court's primary goal 'is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve.' "
 
 [36]
 
 In discerning this purpose, "[t]he best evidence of the legislature's intent is 'the plain language of the statute itself.' "
 
 [37]
 
 In general, "[w]here a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends."
 
 [38]
 
 After reviewing the plain language of the two relevant versions of the statute, we conclude that they unmistakably operate as statutes of repose.
 

 ¶ 16 "Whether a statute that bars or terminates a claim for relief is a statute of limitations or a statute of repose depends on the nature of the statute and the manner in which it operates to cut off the legal right of a person to obtain a remedy for an injury."
 
 [39]
 
 We first described the difference between the two types of statutes in
 
 Berry ex rel. Berry v. Beech Aircraft Corp
 
 .
 
 [40]
 
 Prior to
 
 Berry
 
 , we used the terms almost interchangeably, without recognizing a difference between them.
 
 [41]
 
 In
 
 Berry
 
 , however, we clarified that
 

 [a] statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated or the remedy for the wrong committed is deemed waived. A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action. ...
 

 ....
 

 .... Therefore, a statute of repose may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy.
 
 [42]
 

 Accordingly, we distinguish statutes of limitations and statutes of repose by looking to the event that triggers the start of the statutory timeframe: if the trigger is the accrual of a cause of action, it is a statute of limitation, but if it is some other event, it is a statute of repose.
 
 [43]
 

 ¶ 17 Prior to 2008, the relevant language of section 201 stated that
 

 The state will not sue any person for or in respect to any real property ... by reason of the right or title of the state to the same, unless ... such right or title shall have accrued within seven years before any action or other proceeding for the same shall be commenced ....
 
 [44]
 

 The 2008 amendment made only small changes. It then read as it does now:
 

 The state may not bring an action against any person for or with respect to any real property ... based upon the state's right or title to the real property, unless ... the right or title to the property accrued within seven years before any action or other proceeding is commenced ....
 
 [45]
 

 Accordingly, the 2008 amendment made it clear that the "right or title" that must have "accrued within seven years before [the] action
 or other proceeding" was "right or title
 
 to the property
 
 " that was the basis for the state's claim.
 

 ¶ 18 It is clear from its language that the relevant portion of section 201-both pre- and post-2008 amendment-is a statute of repose.
 
 [46]
 
 Despite the differences in the language of the two versions of the statute, the key operative language is the same: the seven-year timeframe to assert a cause of action based on real property in each version of the statute begins to run when the State's "right or title to the property accrued."
 
 [47]
 
 Accordingly, both versions of the statute are statutes of repose because their limitation periods are not triggered by the accrual of a cause of action, as would be the case for a statute of limitations, but some other event-obtaining an interest in real property-that is not related to the time at which the State is able to assert a claim. Thus, section 201 and its predecessor are statutes of repose that cut off the State's ability to bring an action "for or with respect to any real property, ... based upon the state's right or title to the real property, unless ... the right or title to the property accrued within seven years before any action or other proceeding is commenced."
 
 [48]
 

 ¶ 19 The State argues that if we interpret these statutes as statutes of repose, however, it will work such absurd results when applied in the R.S. 2477 cases that we are required to apply our absurdity doctrine and reform the statutes. As we discuss below, we agree and accordingly construe section 201 and its predecessor as statutes of limitations within the context of the State's R.S. 2477 claims.
 

 III. We Employ the Absurdity Doctrine and Construe Section 201 and Its Predecessor as Statutes of Limitations with Respect to the State's R.S. 2477 Rights of Way
 

 ¶ 20 Although section 201 and its predecessor are by their plain language statutes of repose, the State asks us to apply the absurdity doctrine to construe them as statutes of limitations. The State argues that applying these statutes as statutes of repose leads to the absurd result that it "automatically lost any interest it had in R.S. 2477 rights of way by [October 21,] 1983"-the last date it could have asserted a QTA claim-"even if it could not possibly have filed suit to protect those interests before that date." In response, the United States and SUWA contend that the statutes do not lead to absurd consequences when applied to the State's right of way claims because the State could have filed suit to protect its R.S. 2477 roads before 1983, and, even if the State could not have filed such a suit, there is nothing absurd about "leaving title claims unresolved when doing so will have little to no effect on the practical day-to-day use of the roads at issue."
 

 ¶ 21 We agree with the State. Applying section 201 and its predecessor as statutes of repose would effectively deprive the State of
 its R.S. 2477 rights of way. As statutes of repose, the statutes would have been operating since 1872 to cut off the State's ability to protect rights of way that accrued since 1866-despite the fact that no mechanism to defend such property interests had been created judicially or legislatively until 1972. This is a result "so overwhelmingly absurd that no rational legislator could ever be deemed to have supported a literal application of [the statutes'] text."
 
 [49]
 
 Accordingly, we employ our absurdity doctrine and construe section 201 and its predecessor as statutes of limitations for purposes of the State's R.S. 2477 claims-a statutory construction that both avoids the absurd consequences at issue here and preserves the statutes as operative legislative enactments.
 
 [50]
 

 ¶ 22 As we concluded above, section 201 and its predecessor are by their plain language statutes of repose. Under the plain meaning rule, "where the language of a statute is clear and unambiguous, our analysis [normally] ends."
 
 [51]
 
 But "[a]n equally well-settled caveat to the plain meaning rule" is the absurdity doctrine, which "states that a court should not follow the literal language of a statute if its plain meaning works an absurd result."
 
 [52]
 
 The literal language of a statute works an absurd result when the operation of the statute is "so overwhelmingly absurd that no rational legislator could ever be deemed to have supported a literal application of its text."
 
 [53]
 
 The absurdity doctrine recognizes that although "the plain language interpretation of a statute enjoys a robust presumption in its favor, it is also true that [a legislative body] cannot, in every instance, be counted on to have said what it meant or to have meant what it said."
 
 [54]
 

 ¶ 23 "[A]s is common to all rules of statutory construction, the guiding star of the absurd[ity] doctrine is the intent of the pertinent legislative body, which limits the application of this canon of construction."
 
 [55]
 
 Where a statute works an absurd result, and
 legislative history from the pertinent legislative body shows that the absurd result was unintended,
 
 [56]
 
 the absurdity doctrine preserves legislative intent by construing the statute in a way that ensures that the statutory text does not operate in an unintended, absurd manner.
 
 [57]
 

 ¶ 24 As noted above, section 201 prevents
 

 [t]he state [from] bring[ing] an action against any person for or with respect to any real property ... based upon the state's right or title to the real property, unless ... the right or title to the property accrued within seven years before any action or other proceeding is commenced[.]
 
 [58]
 

 Applied in this case, section 201 and its predecessor preclude any legal action with respect to the State's R.S. 2477 rights of way seven years after the State obtained right or title to those property interests. Because a property right that cannot be legally protected is only an ephemeral right at best,
 
 [59]
 
 these statutes effectively set an expiration date on every R.S. 2477 right of way obtained by the State at seven years from the day the State's title to the right of way was established by acceptance. Given the history of section 201, R.S. 2477, and the QTA, this absurd result could not have been intended by the legislature.
 

 ¶ 25 The Mining Act, which permitted the State to obtain title to rights of way under R.S. 2477, was enacted in 1866. The predecessor to section 201 was enacted in 1872. Prior to the enactment of the QTA in 1972, the State had no legal mechanism to protect its vested rights of way. Because the earliest the State could have raised a QTA claim was 1972, section 201 and its predecessor ensured that the only R.S. 2477 roads the State could have protected against federal intrusion under the QTA were those obtained in and after 1965-seven years before Congress enacted the QTA. Taken together, these statutes created a regime where the right to protect title to R.S. 2477 rights of way obtained prior to 1965 automatically expired with respect to the federal government before any legal mechanism (the QTA) existed that would have permitted the State to protect its vested title.
 

 ¶ 26 Thus, if the State gained a right of way in 1964, the predecessor to section 201 would by 1971 have deprived the State of any cause of action to protect that property interest against federal usurpation, and this despite the fact that the only cause of action that could ever be asserted by the State to protect that property interest would not be statutorily created until passage of the QTA in 1972, one year later. And this pattern of accrual and automatic expiration has been ongoing since 1872. In short, this distinctive interplay between the predecessor to section 201 and R.S. 2477 prior to the passage of the QTA has rendered an unknown number of
 R.S. 2477 roads-gained over a 93 year period-ephemeral, leaving the State as owner in name only with no legal means to protect its property interests from the very governmental body that granted them.
 

 ¶ 27 Not only does the unique interplay between section 201 or its predecessor and R.S. 2477 during this period lead to an absurd result-the accrual of ephemeral property rights-the history of the legislation "confirm[s] that the absurd application was indeed unintended by the legislature."
 
 [60]
 
 As previously noted, the predecessor to section 201, which is a statute of repose, was first enacted before a quiet title cause of action had been created that would permit the State to protect its R.S. 2477 roads against the federal government. The legislature simply could not have rationally intended to cut off the State's ability to protect its rights of way decades before any cause of action existed in the law to protect those interests from federal intrusion. Although it is not absurd for a statute of repose to cut off a cause of action that has not yet accrued,
 
 [61]
 
 a legislature could not intend the overwhelming absurdity of a statute of repose that cuts off a cause of action that has not yet been created either judicially or by statute as a legal remedy.
 

 ¶ 28 The absurd result created by application of section 201 and its predecessor to roads before 1965 is not ameliorated by the passage of the QTA. Even though the enactment of the QTA in 1972 established a legal remedy that would permit the State to protect its property rights from federal intrusion, section 201 and its predecessor-when interpreted as statutes of repose-render that remedy largely illusory. Before the State can bring a QTA cause of action against the United States, it must show that the federal courts have jurisdiction over the suit, which requires the federal government to dispute the State's title to the property.
 
 [62]
 
 This gives the federal government full control over the timing of litigation under the QTA because it can choose when to dispute title and thus choose when a QTA cause of action will accrue. Accordingly, it can merely delay any dispute over the State's R.S. 2477 roads until the statutes' seven-year limitation period has lapsed-again, effectively depriving the State of its property interests. Indeed, Kane County (a plaintiff in this case) recently had its QTA claims for certain R.S. 2477 rights of way dismissed by the Tenth Circuit because the United States had not yet disputed the State's title.
 
 [63]
 
 This means that over thirty years after section 201 or its predecessor cut off the State's ability to defend all R.S. 2477 property interests, Kane County still could not assert a QTA claim in federal court.
 
 [64]
 
 Thus, even with the passage of the QTA, which created a cause of action to protect title to R.S. 2477 rights of way, the idiosyncratic relationship between section 201 and its predecessor, R.S. 2477, and the QTA generates an overwhelmingly absurd result. In summary, when section 201 and its predecessor are applied as statutes of repose to the State's R.S. 2477 rights of way, the State automatically lost its right to protect such rights of way obtained prior to 1965 seven years after those rights of way accrued.
 

 And even with passage of the QTA in 1972, the State's ability to secure its property interests is wholly contingent on the federal government's decision to dispute the State's title-a dispute that the United States may well elect to raise only after the seven-year period prescribed by section 201 and its predecessor. The State's inability to protect the property interests granted to it by the federal government has, in turn, rendered the State's R.S. 2477 rights of way inherently ephemeral with respect to the United States; for a property interest that gives its possessor no defensible rights against an adverse party is a property interest in name only.
 
 [65]
 
 To be sure, statutes of repose often cut off a particular cause of action before it accrues-a non-absurd result. But for most of section 201's history, it operated to cut off a cause of action that had not yet been judicially or legislatively created-a patently absurd result. Ultimately, section 201 and its predecessor go beyond simply prohibiting a cause of action to effectively placing a seven-year lifespan on the State's R.S. 2477 property interests. This is an overwhelmingly absurd result that could not have been intended by the legislative body that originally enacted the predecessor to section 201.
 

 ¶ 29 The dissent, the United States, and SUWA resist this conclusion with several arguments. The dissent first argues that the absurd result identified by the majority-"that Utah would enjoy rights of way granted by the United States without a judicial remedy for quieting title to them against the United States"-"was the prevailing law nationwide for 106 years, from the passage of the Mining Act in 1866 until the passage of the Quiet Title Act in 1972."
 
 [66]
 
 The dissent further argues that, "[i]f that rule of law in fact mandated absurd results, surely in 106 years some court somewhere would have noticed."
 
 [67]
 

 ¶ 30 This argument fails for two reasons. First, the dissent is mistaken to suggest that, because a law has been in effect for some time, it is immune from an absurdity analysis. We commonly apply the absurdity doctrine to statutes that have been on the books for decades.
 
 [68]
 
 And the dissent fails to recognize the obvious explanation for why we have not previously reached the conclusion that we reach today: that the question before us-whether section 201 and its predecessor create an absurd result as applied to the State's R.S. 2477 rights of way-is one of first impression for this court. At no time in these statutes' history has a party presented a legal vehicle for answering this question. And as we have explained above, a plaintiff's ability to bring a valid suit under the QTA hinges on the United States' decision to dispute title to real property, something that the United States may choose to refrain from doing for years or decades.
 
 [69]
 
 So the passage of time fails to support the dissent's argument.
 

 ¶ 31 Second, and more fundamentally, the dissent's argument fails to accurately describe the absurd result identified above. The result created by section 201 is not merely that there was no "judicial remedy for quieting title" to the State's R.S. 2477 roads. As the dissent correctly observes, even without section 201, the State could not have sued the federal government to defend such property interests until passage of the QTA in 1972. And if this were the result at issue, we would be inclined to agree with the dissent that it is not absurd.
 

 ¶ 32 The absurd result is instead that section 201 places a seven-year expiration date on the State's R.S. 2477 property, independent of whether the State could have sued the federal government. Applied according to its plain language, section 201 would reflect a legislative policy that the state can own such property only for seven years. This is an overwhelmingly absurd result. And it is one
 that the legislature could not have intended because, as noted above, in 1872 when section 201 was first enacted, no cause of action existed against the federal government with respect to R.S. 2477 rights of way. Section 201, therefore, operates in concert with the Mining Act and the QTA to create a pattern of automatic expiration of title to a right of way seven years after its creation-a result the legislature could not have intended.
 
 [70]
 

 ¶ 33 Next, the United States and SUWA contend that applying section 201 and its predecessor as statutes of repose is not absurd because "counties and the State have alternatives to title suits for solving [land management] problems, such as applying for rights-of-way under FLPMA Title V[,
 
 43 U.S.C. §§ 1761
 
 - 1771 ]."
 
 [71]
 
 The United States finds this significant, arguing that our opinion in
 
 Marion Energy, Inc. v. KFJ Ranch Partnership
 

 [72]
 
 stands for the proposition that "[a] plain language interpretation of a statute will not be found to create an absurd result where ... plaintiffs have 'alternative avenues' of relief."
 
 [73]
 

 ¶ 34 This argument is unpersuasive. In
 
 Marion Energy
 
 , we decided that a Utah State agency, in coordination with a private corporation, could not condemn a right of way to certain oil and gas deposits under the relevant eminent domain statute, and concluded that because the corporation had "alternative avenues of access to its leased mineral rights," our interpretation of the eminent domain statute was not absurd.
 
 [74]
 
 In other words, we "strictly construed" "any ambiguity in statutory language purporting to grant the power of eminent domain" "in favor of the property owner."
 
 [75]
 

 ¶ 35 Here, the State does not seek to obtain rights of way by a statute that is strictly construed against them-rights of way it could obtain elsewhere. Instead, it seeks to defend the rights it already possesses in certain R.S. 2477 roads. Title V of FLPMA simply does not grant the State any means of defending those rights. As noted by amicus Coalition to Protect America's National Parks, that statute "authorizes the Secretaries of Interior and Agriculture to grant rights-of-way over federal lands for a wide variety of uses and purposes .... subject to various terms and conditions." We fail to see how a statute that allows a federal official to grant new rights of way provides a remedy to protect the disputed rights of way currently under State ownership. Section 201 and its predecessor work an absurd result when applied to the State's R.S. 2477 roads, and the United States' arguments to the contrary are unavailing.
 

 ¶ 36 Finally, the United States and SUWA argue that "there is nothing absurd about leaving title claims unresolved when doing so will have little to no effect on the practical day-to-day use of the roads at issue."
 
 [76]
 
 This
 argument is inapposite and assumes that the United States will never in the future act in any way inconsistent with the claimed rights of way-an assumption that strains credibility. If the United States, through its agencies, decides to prevent ingress to and egress from these rights of way, section 201 and its predecessor, applied as statutes of repose, deprive the State of any legal mechanism to obtain an adequate remedy. The United States' discretion is a flimsy shield indeed to protect the State's lawfully obtained rights of way.
 

 ¶ 37 Because the absurd consequence at issue in this case was unintended by the legislature, we apply our absurdity doctrine. In order to avoid the absurd result created by the relationship between section 201, R.S. 2477, and the QTA, we construe section 201 and its predecessor as statutes of limitations with respect to the State's R.S. 2477 rights of way.
 
 [77]
 
 Read as statutes of limitations for such cases, the State has seven years to bring its QTA cause of action from the date the federal government begins to dispute an R.S. 2477 right of way-the date the State's cause of action under the QTA accrues.
 
 [78]
 
 This avoids the absurdity at issue in this case. As for non-R.S. 2477 state property, we note that section 201 and its predecessor's application to such interests is not before us. Our absurdity doctrine should be cabined to concrete, active legal disputes. Accordingly, we leave it to a future case to decide whether these statutes give rise to absurd consequences when applied to non-R.S. 2477 state property interests.
 

 Conclusion
 

 ¶ 38 Despite the many claims raised by the State as to why our answer to the certified question could be advisory, we leave to the federal courts the resolution of the application of our interpretation of section 78B-2-201 and its predecessor to the underlying cases. Addressing the question on its merits, we conclude that section 201 and its predecessor are, by their plain language, statutes of repose. But applying these statutes as such to the State's R.S. 2477 claims leads to an overwhelmingly absurd result not intended by the legislature. Thus, we answer the certified question as follows: section 201 and its predecessor are statutes of limitations when applied to the State's R.S. 2477 rights of way.
 

 Judge Voros filed a dissenting opinion, in which Judge Toomey joined.
 

 Having recused themselves, Associate Chief Justice Lee and Justice Pearce did not participate herein. Court of Appeals Judges J. Frederic Voros and Kate A. Toomey sat.
 

 There are three potentially relevant versions of the statute: the 2015 version, the 2008 version, and the pre-2008 version. As we discuss below, the two versions we are called to interpret today are the 2008 and pre-2008 versions-the two versions that existed prior to the legislature's most recent amendments.
 

 Act of July 26, 1866, ch. 262, § 8,
 
 14 Stat. 251
 
 , 253, codified at
 
 43 U.S.C. § 932
 
 ,
 
 repealed by
 
 Federal Land Policy & Management Act of 1976, Pub. L. No. 94-579, § 706(a),
 
 90 Stat. 2743
 
 , 2793.
 

 San Juan Cty. v. United States
 
 ,
 
 754 F.3d 787
 
 , 791 (10th Cir. 2014) (citation omitted).
 

 S. Utah Wilderness All. v. Bureau of Land Mgmt.
 
 ,
 
 425 F.3d 735
 
 , 771 (10th Cir. 2005),
 
 as amended on denial of reh'g
 
 (Jan. 6, 2006).
 

 See
 

 Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands
 
 ,
 
 461 U.S. 273
 
 , 286,
 
 103 S.Ct. 1811
 
 ,
 
 75 L.Ed.2d 840
 
 (1983) (The QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title to real property.").
 

 28 U.S.C. § 2409a(g), (i).
 

 Id.
 

 § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a
 
 disputed title
 
 to real property in which the United States
 
 claims an interest
 
 ...." (emphases added));
 
 see also
 

 Kane Cty. v. United States
 
 ,
 
 772 F.3d 1205
 
 , 1210-11 (10th Cir. 2014) (noting that the United States must " 'claim[ ] an interest' in the property at issue" and that "title to the property" must be "disputed" before a court has "jurisdiction over a QTA claim" (citation omitted)).
 

 As the State notes, "[t]he roads ... vary widely in character, ranging from two-lane, fully surfaced arterial connectors to two-track access routes." The State claims that these rights of way "remain in use for many purposes, including ranching, mineral development, fishing, hunting, sightseeing, recreation, and exploring."
 

 U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n
 
 ,
 
 2012 UT 3
 
 , ¶ 9,
 
 270 P.3d 464
 
 (citation omitted).
 

 Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne
 
 ,
 
 2012 UT 66
 
 , ¶ 10,
 
 289 P.3d 502
 
 .
 

 Utah Code § 78-12-2 (2007) (alterations to numbering to reflect current numbering).
 

 Id.
 

 § 78B-2-201 (2009) (alterations to numbering to reflect current numbering).
 

 The Order of Certification, though issued after the legislature amended section 201 in 2015, makes clear that the federal district courts are not asking us to interpret the 2015 version of the statute, but rather the two prior iterations of the statute: the pre-2015, post-2008 version of the statute and the pre-2008 version of the statute, which was substantively unaltered from the version originally enacted in 1872. Thus, unless otherwise indicated, when we refer to section 78B-2-201, we are referring to the pre-2015, post-2008 version of the statute. And when we refer to the predecessor to section 201, we are referring to the pre-2008 version.
 

 Utah Code § 78B-2-201(2) (2015).
 

 See
 

 2015 Utah Laws 2806
 
 ("This bill has retrospective operation to March 12, 1953.").
 

 Utah Code § 78B-2-118.
 

 See
 

 2015 Utah Laws 324
 
 ("This bill has retrospective operation to October 25, 1972.").
 

 The amendment to section 201 indicates a legislative intent to clarify that the section is and was a statute of limitations.
 
 See
 
 Utah Code § 78B-2-201(2) (2015). Section 118 states that "[a]ctions against the federal government regarding real property and that are subject to the [QTA] do not expire under this chapter."
 

 Id.
 

 § 78B-2-118. The United States and SUWA argue that the legislature cannot properly make these amendments retroactive and that, even if it could, such retroactivity would not be constitutional under either the federal or Utah constitutions.
 

 Section 102 states that the limitation periods found in chapter 2 of title 78B apply "except in specific cases where a different limitation is prescribed by statute." Thus, the State argues that the QTA's statute of limitations trumps the Utah statute. The United States and SUWA point out that the applicability of the QTA statute of limitations does not necessarily preclude the applicability of a Utah statute of repose because it is possible to have both a federal statute of limitations and a state statute of repose apply to a particular claim.
 
 See
 

 CTS Corp. v. Waldburger
 
 ,
 
 573 U.S. 1
 
 ,
 
 134 S.Ct. 2175
 
 , 2185-88,
 
 189 L.Ed.2d 62
 
 (2014).
 

 The State argues that "state" is defined in such a way that it does not include counties.
 
 See
 
 Utah Code § 68-3-12.5(28). We have never interpreted this section, and we conclude that we need not do so here because it is unnecessary to our resolution of the question certified to us.
 

 The State points to previous cases that held that this portion of the Utah Constitution prohibited the application of section 201 or its predecessor to certain claims involving lands granted to the State in trust by the Enabling Act.
 
 See
 

 Van Wagoner v. Whitmore
 
 ,
 
 58 Utah 418
 
 ,
 
 199 P. 670
 
 , 675 (1921). It is not clear, however, whether R.S. 2477 operates in a similar way as the Enabling Act such that the rights of way granted under that statute would become part of the public trust.
 

 U.S. Fid. & Guar. Co. v. U.S. Sports Specialty Ass'n
 
 ,
 
 2012 UT 3
 
 , ¶ 9,
 
 270 P.3d 464
 
 (emphasis added) (citation omitted).
 

 See
 
 id.
 

 ("A certified question from the federal district court does not present us with a decision to affirm or reverse a lower court's decision; as such, traditional standards of review do not apply." (citation omitted));
 
 Ray v. Wal-Mart Stores, Inc.
 
 ,
 
 2015 UT 83
 
 , ¶¶ 63-65,
 
 359 P.3d 614
 
 (stating that our approach to answering a certified question requires us to "simply accept the facts the federal district court asked us to assume for purposes of certification," without attempting to "resolv[e] any underlying factual disputes").
 

 The State did not object to or otherwise attempt to modify the certification order.
 

 This question, unlike the other arguments raised by the State, can be fairly said to be included within the scope of the certified question, so we asked the parties to provide supplemental briefing on the question of whether the United States is a "person" for purposes of section 201 and its predecessor. We appreciate the parties' thorough briefing on this important question. That briefing demonstrates that there are persuasive arguments both for and against reading the word "person" to include the United States.
 

 All versions of the statute provide that the State will not sue "any person" under certain circumstances. The State argues that there is a "longstanding interpretive presumption that 'person' does not include the sovereign."
 
 Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens
 
 ,
 
 529 U.S. 765
 
 , 780,
 
 120 S.Ct. 1858
 
 ,
 
 146 L.Ed.2d 836
 
 (2000). So, in the State's view, section 201 and its predecessor do not apply to the United States at all. But the United States contends that the plain meaning of the word "person" includes "any property owner." It also relies on the 2010 amendments to the general definitions statute, which defines "person" broadly as including political subdivisions, government offices, "other bod[ies] of government," and "any other organization or entity." Utah Code § 68-3-12.5(17). SUWA argues that the pre-2010 versions of the general definitions statute are the relevant ones, and those versions define "person" to include a "body politic." In SUWA's and the United States' view, the United States is a "body politic," and thus a "person" for purposes of these statutes.
 

 A rich body of law has grown up around how to construe the word "person" when it is employed in statute. On one hand, the United States Supreme Court has long recognized an "often-expressed understanding that 'in common usage, the term "person" does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.' "
 
 Will v. Mich. Dept. of State Police
 
 ,
 
 491 U.S. 58
 
 , 64,
 
 109 S.Ct. 2304
 
 ,
 
 105 L.Ed.2d 45
 
 (1989) (alterations in original) (quoting
 
 Wilson v. Omaha Indian Tribe
 
 ,
 
 442 U.S. 653
 
 , 667,
 
 99 S.Ct. 2529
 
 ,
 
 61 L.Ed.2d 153
 
 (1979) (quoting
 
 United States v. Cooper Corp.
 
 ,
 
 312 U.S. 600
 
 , 604,
 
 61 S.Ct. 742
 
 ,
 
 85 L.Ed. 1071
 
 (1941) )). This principle has come to be known as the "artificial-person canon." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 273 (2012) ("The word
 
 person
 
 includes corporations and other entities, but not the sovereign."). But the question appears to be more nuanced than this formulation might convey. Some courts have applied a "benefit-burden" rule, such that a court will construe the word "person" to include the sovereign when it would be to the sovereign's benefit, but not when it would be to the sovereign's detriment.
 
 See
 
 3 Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutes and Statutory Construction § 62:2 (7th ed. 2016) ("[A] general statute which is beneficial to the sovereign will be liberally interpreted to secure for it the same rights, privileges and protection granted to individuals.");
 
 see also
 

 Stanley v. Schwalby
 
 ,
 
 147 U.S. 508
 
 , 519,
 
 13 S.Ct. 418
 
 ,
 
 37 L.Ed. 259
 
 (1893) ("Although not bound by statutes of limitation, the United States, as we have seen, were entitled to take the benefit of them ...."). But other courts appear not to recognize any type of benefit-burden rule and have concluded that, without express definition, the sovereign is not a "person" even where the statute would work a clear benefit to it.
 
 See
 

 In re Fox's Will
 
 ,
 
 52 N.Y. 530
 
 , 535 (1873) ("[N]o authority has been referred to showing that the word person, when used in a statute, may, without further definition, be held to embrace a State or nation."),
 
 aff'd sub nom.
 

 United States v. Fox
 
 ,
 
 94 U.S. 315
 
 ,
 
 24 L.Ed. 192
 
 (1876).
 

 This question is even more nuanced in Utah, given that the legislature has defined "person" in the general definitions statute. We agree with SUWA that, given that the events in this case took place before 2010, the relevant version of the definitions statute appears to be the pre-2010 versions, which define "person" to include "bodies politic."
 
 See
 
 Revised Statutes of Utah § 65-2-2498(5) (1898); Utah Code § 68-3-12(2)(o) (2004). But it is not clear whether the United States is a "body politic." Some courts have stated that a sovereign is a "body politic," but other courts have held that that term cannot be construed to encompass the sovereign.
 
 Compare
 

 Cotton v. United States
 
 ,
 
 52 U.S. 11
 
 How. 229, 231,
 
 13 L.Ed. 675
 
 (1850) ("Although as a sovereign the United States may not be sued, yet as a corporation or body politic they may bring suits to enforce their contracts and protect their property, in the State courts, or in their own tribunals administering the same laws.")
 
 with
 

 Des Moines Cty. v. Harker
 
 ,
 
 34 Iowa 84
 
 , 86 (1871) ("The legislature does not, when prescribing a rule for the State, call it a 'body politic and corporate.' It is not probable such a designation can be found in the entire history of our legislation."). So the pre-2010 definition of "person" does not definitively encompass the United States.
 

 Even if we were to look to the 2010 amendments for the definition of "person," it is still not clear that that definition includes the United States. The 2010 amendments provide that "person" means, among other things, "a political subdivision; a government office, department, division, bureau, or other body of government; and any other organization or entity." Utah Code § 68-3-12.5(17)(i), (j), (k). Some of these terms, for example "other body of government" and "any other organization or entity," might appear broad enough to include the United States. But the canons of
 
 ejusdem generis
 
 and
 
 noscitur a sociis
 
 would suggest that these catch-alls cannot broaden the otherwise limited list, where each enumerated item is a government
 
 subdivision
 
 , and none is a sovereign.
 

 Contrary to the dissent's assertion, it is not clear that the constitutional avoidance canon is sufficient to resolve this question.
 
 Cf.
 

 infra
 
 ¶79 n.90. While it is true that a state may not discriminate against the United States, it is not clear that providing a statute of repose or limitations defense to others, but not to the sovereign-who is protected from suit, in the ordinary course of events, by the doctrine of sovereign immunity-would constitute "discriminating" against the United States. For example, it could be said that it is solely by virtue of its own voluntary waiver, and not the state law, that the United States finds itself in a different position than other property owners.
 

 Given the strength of these competing arguments, we find it sufficient to assume for purposes of this opinion that the word "person" in section 201 and its predecessor includes the United States.
 

 See
 

 Egbert v. Nissan N. Am., Inc.
 
 ,
 
 2007 UT 64
 
 , ¶ 20,
 
 167 P.3d 1058
 
 (noting that the parties disagreed about a legal issue related to but not addressed by the certified question and had "briefed [the] issue at length," but declining to address the issue "[b]ecause the question of who bears the burden of proof was not certified to us").
 

 Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne
 
 ,
 
 2012 UT 66
 
 , ¶ 8,
 
 289 P.3d 502
 
 (emphasis added).
 

 Id.
 
 ¶¶ 8-9. Indeed, as we discuss below, we interpret section 201 and its predecessor as statutes of repose in the abstract using our usual plain language approach to statutory interpretation. Despite this conclusion, we apply another interpretive tool, the absurdity doctrine, and conclude that the statutes are absurd as applied to the State's R.S. 2477 claims. Thus, we answer the certified question-the proper interpretation of the statute-within the context of the underlying cases. But we do not need to reach beyond section 201-beyond the scope of the certified question-to make this analysis.
 

 Id.
 
 ¶¶ 9-10.
 

 Id.
 
 ¶ 10 (emphasis added).
 

 Id.
 

 To be sure, we may not answer a question of state law when there is a serious question as to the jurisdiction of the federal court over the underlying case or if the question asks us to opine on a purely hypothetical situation. In either circumstance, there is a high risk of issuing an unconstitutional advisory opinion.
 
 See, e.g.
 
 ,
 
 Utah Republican Party v. Cox
 
 ,
 
 2016 UT 17
 
 , ¶¶ 8-11,
 
 373 P.3d 1286
 
 (per curiam) (refusing to answer a certified question because it was "purely hypothetical and not ripe for review");
 
 Endow v. Utah Transit Auth.
 
 , No. 20140024-SC,
 
 2015 WL 4394047
 
 , at *1 (Utah July 17, 2015) (revoking "our acceptance of the certified question as improvident" to avoid the possibility of issuing an advisory opinion because there were "serious jurisdictional concerns" with whether the federal district court had subject matter jurisdiction). But neither of these circumstances is before us today. The mere fact that issues of fact and law remain to be resolved that may impact the applicability of our answer to the underlying case does not warrant our refusal to answer the certified question. Otherwise we would require federal courts to exhaust every other possible dispositive argument and resolve every factual dispute before certifying a question to us. We have not required this in the past and do not do so now.
 

 As noted above, the federal courts have not asked us to interpret the post-2015 amendment version of the statute.
 

 Utah Code § 78B-2-201 (2009) (alteration to numbering to reflect current numbering).
 

 Utah Code § 78-12-2 (2007) (alterations to numbering to reflect current numbering). The language of this iteration of section 201 remained substantively unaltered from its enactment in 1872 until the 2008 amendments.
 

 Biddle v. Wash. Terrace City
 
 ,
 
 1999 UT 110
 
 , ¶ 14,
 
 993 P.2d 875
 
 (citation omitted).
 

 State v. Miller
 
 ,
 
 2008 UT 61
 
 , ¶ 18,
 
 193 P.3d 92
 
 (citation omitted).
 

 Torrie v. Weber Cty.
 
 ,
 
 2013 UT 48
 
 , ¶ 11,
 
 309 P.3d 216
 
 (citation omitted).
 

 Stoker v. Workers' Comp. Fund of Utah
 
 ,
 
 889 P.2d 409
 
 , 411 (Utah 1994)
 

 717 P.2d 670
 
 , 672 (Utah 1985).
 

 See
 

 Sun Valley Water Beds of Utah, Inc. v. Herm Hughes & Son, Inc.
 
 ,
 
 782 P.2d 188
 
 , 189 n.5 (Utah 1989) ("[M]any courts and commentators do not distinguish between statutes of limitations and repose.").
 

 717 P.2d at 672
 
 .
 

 See
 

 Sun Valley
 
 ,
 
 782 P.2d at 189
 
 ("A statute of limitations precludes suit a legislatively imposed number of years after the accrual of a cause of action. A statute of repose bars suit a specified number of years after the occurrence of a particular event without regard to the date of the accrual of the cause of action.").
 

 Utah Code § 78-12-2 (2007).
 

 Id.
 

 § 78B-2-201 (2009).
 

 The State claims that the 2015 amendment clarifies that the previous iterations of the statute all were intended to operate as statutes of limitations. The 2015 amendment to the statute does seem to indicate the legislative intent to transform section 201 in its entirety into a statute of limitation, and to do so retroactively. The parties have argued at some length about the retroactivity of this amendment. But given our conclusion that applying section 201 and its predecessor as statutes of repose is absurd, and that we accordingly construe the statutes as statutes of limitations with respect to the State's R.S. 2477 claims, we see no need to further inquire as to the applicability or impact of the 2015 amendment.
 

 Id.
 

 § 78B-2-201(1) (2009).
 
 Cf.
 

 id.
 

 § 78-12-2 (2007) (limitation period of a claim "in respect to any real property" triggered when "such right or title shall have accrued"). Although the State questions what the statutes mean by referring to a "right" that accrues, it is clear from the context that they are referring to circumstances where the State obtains either title to real property-"the numerous
 
 rights
 
 and privileges attendant to ownership of property," the whole "bundle of sticks,"
 
 CFD Payson, LLC v. Christensen
 
 ,
 
 2015 UT App 251
 
 , ¶ 12 n.5,
 
 361 P.3d 145
 
 (emphasis added) (citation omitted)-or a right in real property-something less than title, less than the collection of all of the rights one can have in real property.
 

 Utah Code § 78B-2-201(1) (2009).
 
 Cf.
 
 id.
 

 § 78-12-2 (2007) ("The state will not sue any person
 
 for or in respect to any real property
 
 ...
 
 by reason of the right or title of the state to the same
 
 ,
 
 unless ... such right or title shall have accrued within seven years before any action or other proceeding for the same shall be commenced
 
 ...." (emphasis added)).
 

 Cox v. Laycock
 
 ,
 
 2015 UT 20
 
 , ¶ 72,
 
 345 P.3d 689
 
 (Lee, J., concurring).
 

 We note that the State urges this court to consider the effect of section 201 and its predecessor on
 
 all
 
 state real property, including non-R.S. 2477 property interests. The United States and SUWA oppose this approach, averring that we must instead limit our absurdity analysis solely to the factual and legal context of this case, lest we modify the statute on the basis of a case not before us. Though we do not rely on a consideration of non-R.S. 2477 property interests in this case to conclude that the statutes work absurd results when applied to the State's rights of way, we do note that we need not wholly disregard how a statute may operate in a hypothetical legal dispute. Considering how a statute would operate on different fact patterns in diverse legal contexts can sharpen the boundary between an absurd and non-absurd application of the statute. This, in turn, may enable a court to determine whether the statute as applied to the case before it leads to an overwhelmingly absurd result. Because an application of the plain language of section 201 and its predecessor clearly lead to an absurd result in this case, we need not consider the State's hypotheticals or the Appellees' responses to those hypotheticals. We do not, however, foreclose our ability to consider hypothetical applications of a statute in some future absurdity doctrine case.
 

 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 11,
 
 165 P.3d 1206
 
 .
 

 Id.
 

 (alteration in original) (citation omitted).
 

 Cox
 
 ,
 
 2015 UT 20
 
 , ¶ 72,
 
 345 P.3d 689
 
 (Lee, J., concurring) ("If we are to maintain respect for the legislature's policymaking role, and avoid the temptation to substitute our preferences for its decisions, we must not override the statutory text with our sense of good policy in a case in which we deem the statute's formulation merely unwise or incongruous.").
 

 FBI v. Abramson
 
 ,
 
 456 U.S. 615
 
 , 638,
 
 102 S.Ct. 2054
 
 ,
 
 72 L.Ed.2d 376
 
 (1982) (O'Connor, J., dissenting) (citation omitted). Because the absurdity doctrine modifies a statute contrary to its plain meaning, it "is strong medicine" to be administered "in the rare and limited circumstance in which the terms as written would lead to an outright
 
 absurdity
 
 ."
 
 Cox
 
 ,
 
 2015 UT 20
 
 , ¶ 71,
 
 345 P.3d 689
 
 (Lee, J., concurring).
 

 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 12,
 
 165 P.3d 1206
 
 . The bulk of the dissent's criticism of our application of the absurdity doctrine fails to account for this important limitation. Were we indeed to override the plain meaning of statutory text whenever we view it as reflecting "a bad substantive choice,"
 
 infra
 
 ¶49 (citation omitted), it would be fair to raise separation of powers concerns. But because the absurdity doctrine asks whether the result mandated by a statute's plain text is so absurd that no rational legislator could
 
 possibly
 
 have intended it, this doctrine "functions to preserve legislative intent," rather than frustrate it.
 
 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 12,
 
 165 P.3d 1206
 
 .
 

 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 21,
 
 165 P.3d 1206
 
 ("Although we generally do not consult legislative history where the meaning of the statute is clear, after finding that the plain meaning has been applied in an absurd manner, we seek to confirm that the absurd application was indeed unintended by the legislature.").
 

 We note that the scope of the absurdity doctrine-as we have applied it-is not limited to "scrivener's error[s]," i.e., statutes whose plain meaning would create an absurd result in all or nearly all of its applications.
 
 Cf.
 

 infra
 
 ¶47 (citation omitted). Under this doctrine as we have articulated it, the question is whether the statute creates "
 
 an
 
 absurd result," i.e., a result that is absurd in the particular circumstances.
 
 See, e.g.
 
 ,
 
 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 24,
 
 165 P.3d 1206
 
 (concluding that it would be absurd to apply Utah's child sex abuse statute-which undoubtedly has a broad swath of non-absurd applications-"in situations where no true victim or perpetrator can be identified");
 
 Tschaggeny v. Milbank Ins. Co.
 
 ,
 
 2007 UT 37
 
 , ¶ 28,
 
 163 P.3d 615
 
 (concluding that it would be absurd to apply a prejudgment interest statute where it would "require a defendant to pay interest on money that ha[d] already been remitted to the plaintiff"). The United States Supreme Court has applied the doctrine in a similar way.
 
 See
 

 United States v. Kirby
 
 , 74 U.S. (7 Wall.) 482, 485-86,
 
 19 L.Ed. 278
 
 (1868) (concluding that it would create an absurd result to apply a statute criminalizing " 'knowing[ly] and wilfully' obstruct[ing] or retard[ing] the passage of the mail" to a sheriff's arrest of a mail carrier who was in the process of transporting mail).
 

 Utah Code § 78B-2-201 (2009). As discussed, the predecessor to section 201 has the same substantive effect.
 

 State v. Morgan
 
 ,
 
 23 Utah 212
 
 ,
 
 64 P. 356
 
 , 361 (1901) ("A right of which the possessor cannot avail himself is practically no right." (citation omitted)).
 

 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 21,
 
 165 P.3d 1206
 
 .
 

 See, e.g.,
 

 Berry ex rel. Berry v. Beech Aircraft Corp.
 
 ,
 
 717 P.2d 670
 
 , 672 (Utah 1985) ("[A] statute of repose may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy.").
 

 See
 

 Kane Cty. v. United States
 
 ,
 
 772 F.3d 1205
 
 , 1210-11 (10th Cir. 2014) ("[F]or a court to have jurisdiction over a QTA claim, the plaintiff must establish that: (1) the United States 'claims an interest' in the property at issue; and (2) title to the property is '
 
 disputed
 
 .' " (emphasis added) (citation omitted)).
 

 Id.
 

 at 1213
 
 .
 

 Any right of way under R.S. 2477 had to be established by 1976, the year the statute was repealed. Thus, assuming that the State Parties perfected title to all of their rights of way immediately prior to the statute's repeal, under the United States' view of section 201 and its predecessor, the State Parties were permitted to bring suit to protect their interests for only the next seven years, until 1983. Thus, though Kane County's property right accrued at the latest by 1976, the United States argues it was prohibited from bringing suit after 1983-despite the fact that Kane County still had no effective legal mechanism it could use to protect that right even in 2014.
 

 Jeffs v. Stubbs
 
 ,
 
 970 P.2d 1234
 
 , 1241-42 (Utah 1998) ("[O]wnership is a collection of rights to possess, to use and to enjoy property, including the right to sell and transmit it ...." (second alteration in original) (citation omitted)).
 

 Infra
 
 ¶ 39.
 

 Infra
 
 ¶ 40.
 

 See
 

 Tschaggeny
 
 ,
 
 2007 UT 37
 
 , ¶ 28,
 
 163 P.3d 615
 
 (applying the absurdity doctrine in 2007 to a statute originally enacted in 1975).
 

 See
 

 supra
 
 ¶28.
 

 The dissent "cannot see how a non-absurd result mandated by federal law has become absurd when mandated by state law."
 
 Infra
 
 ¶54. But this reasoning fails to appreciate "the pertinent legislative body" whose intent we must ascertain.
 
 State ex rel. Z.C.
 
 ,
 
 2007 UT 54
 
 , ¶ 12,
 
 165 P.3d 1206
 
 . It may be perfectly rational for the United States Congress to choose not to waive its sovereign immunity. But it is completely nonsensical for the Utah legislature to enact a statute cutting off its ability to own these valuable R.S. 2477 rights of way after seven years.
 

 The dissent further argues that "[t]he absurdity doctrine does not authorize us to reject the clear meaning of an unambiguous statute merely because that statute prescribes a result that seems to disfavor the State."
 
 Infra
 
 ¶54. Quite right. We agree completely with that statement, but as we explain, section 201 and its predecessor do a great deal more than merely "disfavor the State." We agree with the dissent that "[a] result is not absurd merely because reasonable people viewing a statute with the benefit of hindsight would conclude that the Legislature acted improvidently."
 
 Infra
 
 ¶55 (citation omitted). But here, we conclude not that the legislature "acted improvidently" in passing section 201 and its predecessors, but instead conclude that no rational legislator could have intended these statutes to operate as statutes of repose under the circumstances of this case.
 

 The dissent also raises this argument.
 
 See
 

 infra
 
 ¶¶57-64. And we find it unpersuasive for the same reasons we now articulate.
 

 2011 UT 50
 
 ,
 
 267 P.3d 863
 
 .
 

 Quoting
 
 id.
 
 ¶30.
 

 Id.
 
 ¶¶ 1, 30.
 

 Id.
 
 ¶ 16.
 

 The United States supports this argument by citing
 
 Block v. North Dakota ex rel. Board of University and School Lands
 
 , where the Supreme Court left North Dakota's title to certain real property "unresolved" under the QTA.
 
 461 U.S. 273
 
 , 291,
 
 103 S.Ct. 1811
 
 ,
 
 75 L.Ed.2d 840
 
 (1983). The facts of that case simply have no bearing on our absurdity analysis. Section 201 and its predecessor do not merely leave title "unresolved" under the QTA. They foreclose any means of defending the rights the State does hold in R.S. 2477 roads. Thus,
 
 Block
 
 cannot guide our analysis here.
 

 We note that our decision to construe these statutes as statutes of limitations accords with legal authorities interpreting similar statutes around the time the predecessor to section 201 was enacted. In
 
 People v. Arnold
 
 , the New York Court of Appeals interpreted New York's
 
 Nullum Tempus
 
 Act, under which
 

 [t]he people of [New York] have agreed that they will not sue, or implead any person, for or in respect to any lands, by reason of any right or title of the people to the same, which shall not have accrued within the space of forty years before suit for the same be commenced, unless the people, or those under whom they claim, shall have received the rents and profits thereof within the said space of forty years.
 

 4 N.Y. 508
 
 , 510 (1851). This statute "was taken from the English
 
 nullum tempus
 
 act," which placed a time limit on the king's ability to eject private parties from crown lands.
 

 Id.
 

 at 511-12
 
 . The New York Court of Appeals interpreted this statute not as one of repose, but as a statute of limitation, establishing the condition under which a private party could obtain title to state land by adverse possession. The fact that courts interpreted similar statutes around the time of enactment of section 201's predecessor to be statutes of limitations further enhances our conclusion that the legislature did not intend for section 201 to operate as a statute of repose to cut off the State's R.S. 2477 rights of way.
 

 Valley Colour, Inc. v. Beuchert Builders, Inc.
 
 ,
 
 944 P.2d 361
 
 , 364 (Utah 1997) ("[A] cause of action accrues 'upon the happening of the last event necessary to complete the cause of action.' " (citation omitted)).